# In the United States Court of Appeals for the Sixth Circuit

---

FIRSTENERGY CORP.,

*Petitioner.*

---

United States District Court for the
Southern District of Ohio (Nos. 20-cv-3785, 20-cv-4287)
(Hon. Algenon L. Marbley)

---

## *AMICI CURIAE* BRIEF OF CORPORATE LAW AND LEGAL ETHICS SCHOLARS IN SUPPORT OF PETITIONER FIRSTENERGY CORP. AND REVERSAL

---

ERIC C. CHAFFEE
CASE WESTERN RESERVE
UNIVERSITY SCHOOL OF LAW
11075 East Boulevard
Cleveland, OH 44106
216-368-2768

*Counsel for Amici Curiae*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: 24-3654          Case Name: In re FirstEnergy Corp.

Name of counsel: See Appendix

Pursuant to 6th Cir. R. 26.1, See Appendix
                              *Name of Party*

makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the
    identity of the parent corporation or affiliate and the relationship between it and the named
    party:

> No

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest
    in the outcome? If yes, list the identity of such corporation and the nature of the financial
    interest:

> No

---

CERTIFICATE OF SERVICE

I certify that on _____ August 5, 2024 _____ the foregoing document was served on all
parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not,
by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Eric C. Chaffee

---

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

**<u>Appendix</u>**

**Name of Counsel:**

Eric C. Chaffee
CASE WESTERN RESERVE
UNIVERSITY SCHOOL OF LAW
11075 East Boulevard
Cleveland, OH 44106
216-368-2768
Eric.Chaffee@Case.edu

**Name of Party:**

Lin (Lynn) Bai
Anat Alon-Beck
Brian Broughman
Eric C. Chaffee
Joan MacLeod Heminway
Alan Kluegel
Brian Kingsley Krumm
Andrew S. Pollis
Cassandra Burke Robertson
John (Jack) P. Sahl
Tomer S. Stein

# TABLE OF CONTENTS

*Page*

DISCLOSURE OF CORPORATE AFFILIATIONS & FINANCIAL INTEREST .......................................................................... ii

TABLE OF CONTENTS ............................................................iv

TABLE OF AUTHORITIES ........................................................vi

INTERESTS AND IDENTITIES OF AMICI CURIAE ...........................................1

INTRODUCTION AND SUMMARY OF ARGUMENT .......................................2

ARGUMENT ..........................................................................5

I. Supreme Court Precedent Safeguards the Attorney-Client Privilege and Work-Product Protection in the Context of Internal Corporate Investigations Because Attorney Investigations Are Foundational to Providing Legal Services. ..............................................................5

    A.    The District Court's Order Ought to Be Reversed Based on Supreme Court Precedent Regarding the Attorney-Client Privilege in Internal Corporate Investigations. ...............................5

    B.    The District Court's Order Ought to Be Reversed Based on Supreme Court Precedent Regarding the Work-Product Doctrine in Internal Corporate Investigations. .................................7

    C.    The District Court's Order Ought to Be Reversed Because the Reasons for the Attorney-Client Privilege and Work-Product Doctrine Far Outweigh the Plaintiffs' Admitted Lack of Need for the Requested Documents. ......................................9

II. To the Extent that it is Relevant to the Work-Product Doctrine, Internal Corporate Investigations for Purposes of Obtaining Legal Advice and Preparing for Litigation Are an Expected and Predictable Result of Anticipated and Pending Government Investigations and Lawsuits. ......................10

III. Even if the Communications in This Case Did Not Occur in Anticipation of Litigation, the Attorney-Client Privilege Should Still Apply to

Communications for Obtaining Legal Advice Relating to Compliance with
Securities Regulation, Employment Law, and Contact Law. ..................................16

IV. Protecting Internal Investigations from Discovery Under the Attorney-
Client Privilege and Work-Product Doctrine Is Essential to the Ethical and
Efficient Operation of Corporations. ...................................................................19

    A.    Protecting Internal Investigations Under the Attorney-Client
Privilege and Work-Product Doctrine Is Necessary to Allow
Directors and Officers to Meet Their Fiduciary Duties of Care
and Good Faith. ........................................................................ 19

    B.    Protecting Internal Investigations Under the Attorney-Client
Privilege and Work-Product Doctrine Is Necessary to Allow
Directors and Officers to Make Better Business Judgments. ........... 21

    C.    Protecting Internal Investigations Under the Attorney-Client
Privilege and Work-Product Doctrine Is Necessary to Allow
Lawyers to Operate as Trusted Advisers. ...................................... 26

CONCLUSION ........................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Behr Dayton Thermal Products*, LLC,
 298 F.R.D. 369 (S.D. Ohio 2013) ...............................................................16, 17

*Chesher* v. *Allen*,
 122 Fed. Appx. 184 (6th Cir. 2005)....................................................................10

*Fausek v. White*,
 965 F.2d 126 (6th Cir. 1992) ..............................................................................16

*Hickman v. Taylor*,
 329 U.S. 495 (1947)................................................................................7, 18, 26

*Koos v. Cent. Ohio Cellular, Inc.*,
 641 N.E.2d 265 (8th Dist.1994) .........................................................................23

*In re Lott*,
 424 F.3d 446 (6th Cir. 2005) ...............................................................................6

*Maas v. Maas*, 161 N.E.3d 863 (Ohio Ct. App. 2020) ..........................................22

*Mohawk Indus., Inc.* v. *Carpenter*,
 558 U.S. 100 (2009).......................................................................................9, 10

*Radol v. Thomas*,
 772 F.2d 244 (6th Cir. 1985) ..............................................................................23

*Reed v. Baxter*,
 134 F.3d 351 (6th Cir. 1998) ..............................................................................16

*Stepak v. Schey*,
 553 N.E.2d 1072 (Ohio 1990) ............................................................................24

*Swidler Berlin v. United States*,
 524 U.S. 399 (1998) ...........................................................................................12

*Upjohn Co.* v. *United States*,
449 U.S. 383 (1981)..............................................................5, 6, 25, 26

*United States v. Bartone*,
400 F.2d 459 (6th Cir.1968) ............................................................14

*United States* v. *Nobles*,
422 U.S. 225, 238 (1975)...................................................................18

*United States v. Roxworthy*,
457 F.3d 590 (6th Cir. 2006) ..............................................................8

**Statutes and Rules**

Federal Rule of Evidence 26(b)(3) ..........................................................7

Federal Rule of Evidence 201(b) ..........................................................13

Ohio Revised Code Section 1701.59 ...........................................20, 23

Ohio Revised Code Section 1701.641 ...............................................20

**Other Authorities**

Byrson P. Burnham, *The Attorney-Client Privilege in the Corporate Arena*, 24 BUS. LAW. 901 (1969) ......................................................6

Sarah Helene Duggin, *Internal Corporate Investigations: Legal Ethics, Professionalism and the Employee Interview*, 2003 COLUM. BUS. L. REV. 859 (2003) ......................................10, 11

Investigations & White Collar Defense, JonesDay (last visited July 19, 2024), https://www.jonesday.com/en/practices/investigations--white-collar-defense?tab=overview.................................................13

Government Investigations & White Collar, Squire Patton Boggs (last visited Aug. 5, 2024), https://www.squirepattonboggs.com/en/services/practice-areas/governmentinvestigations..................................................12, 13

# INTERESTS AND IDENTITIES OF AMICI CURIAE[1]

The amici curiae are academics with strong interests in corporate law, legal ethics, and evidentiary privileges from law schools within the jurisdiction of the Sixth Circuit. Each wishes to assist this Court in thinking about the important issues of law in this case. In alphabetical order, the amici curiae are as follows:[2]

Lin (Lynn) Bai
Professor of Law
The University of Cincinnati College of Law

Anat Alon-Beck
Associate Professor of Law
Case Western Reserve University School of Law

Eric C. Chaffee
Professor of Law
Peter M. Gerhart Distinguished Research Scholar
Director, Compliance, Risk Management & Financial Integrity Institute
Co-Director, Center for Business Law
Case Western Reserve University School of Law

Brian Broughman
Professor of Law
Vanderbilt Law School

---

[1] No counsel for a party authored this brief in whole or in part, and no person or entity, other than amici curia, contributed money to fund its preparation or submission. Amici submit this brief with a motion for leave to file, as to which the Petitioner consents and the Respondents have not consented.

[2] This brief reflects the views of the listed individuals and not any institution. Institutions are shown merely for purposes of identification.

Joan MacLeod Heminway
Rick Rose Distinguished Professor of Law
The University of Tennessee College of Law

Alan Kluegel
Assistant Professor of Law
University of Kentucky J. David Rosenberg College of Law

Brian Kingsley Krumm
Interim Director Clayton Entrepreneurial Law Center
Director, Transactional Law Clinic
Associate Professor
The University of Tennessee College of Law

Andrew S. Pollis
Professor of Law
Case Western Reserve University School of Law

Cassandra Burke Robertson
John Deaver Drinko - BakerHostetler Professor of Law
Director, Center for Professional Ethics
Case Western Reserve University School of Law

John (Jack) P. Sahl
Joseph G. Miller Professor of Law, Emeritus
The University of Akron School of Law

Tomer S. Stein
Assistant Professor of Law and Wilkinson Research Professor
The University of Tennessee College of Law

## INTRODUCTION AND SUMMARY OF ARGUMENT

A Special Master appointed by the District Court has ordered the discovery of

the internal investigation of the Defendants in this matter.  Order by Special Master

on Mot. to Compel, at PageID 12387.  The District Court affirmed that order.  That holding jeopardizes the ability of lawyers to communicate fully with corporate management.  The attorney-client privilege and work-product doctrine are essential to the ethical and efficient operation of corporations, especially in the context of internal investigations.  The attorney-client privilege and the work-product doctrine are crucial to allow corporate managers to meet their fiduciary duties, to make better business judgments, and to rely on attorneys as trusted advisers.

The Supreme Court has wisely safeguarded the ability of lawyers to communicate fully with corporate management through two **distinct** doctrines, the attorney-client privilege and the work-product doctrine.  Importantly, the Supreme Court did this in cases that involve internal investigations, although the doctrines extend far beyond that context.  While the work-product doctrine is limited to documents and tangible things prepared in anticipation of litigation by or for a party or by or for that party's representative, the attorney-client privilege is not so limited and extends to such issues as compliance with securities regulation, employment law, and contract law.

Internal investigations for purposes of obtaining legal advice and preparing for litigation are an expected and predictable result of anticipated and pending government investigations and lawsuits.  When anticipated and pending government investigations and lawsuits appear, corporate managers routinely engage counsel to

conduct internal investigations. Eventually, the results of these investigations may be used for other business purposes, but the investigations occur because of anticipated and pending government investigations and lawsuits. These are well-accepted practices in the business world, but apparently the Special Master was unaware of them.

Even in the absence of pending and anticipated litigation, corporations often need legal advice. Communications about such advice are protected by the attorney-client privilege as well.

Because this matter has become so muddled based on the fixation on what occurred in anticipation of litigation, rather than acknowledging the separate tests that apply to the two doctrines, this Court should clarify the state of these doctrines in this Circuit. The public and legal profession will benefit from this Court's wisdom and clarification. While corporations need to be held to account for wrongdoing, they also need to be able to obtain legal advice to avoid wrongdoing in the first place and to address legal issues when they occur. The District Court's disregard of the attorney-client privilege and the work-product doctrine was a serious error that should result in the granting of the petition for mandamus and reversal of the order below.

# ARGUMENT

**I. Supreme Court Precedent Safeguards the Attorney-Client Privilege and Work-Product Protection in the Context of Internal Corporate Investigations Because Attorney Investigations Are Foundational to Providing Legal Services.**

The attorney-client privilege and the work-product doctrine are foundational to legal representation in the United States. The Supreme Court has sanctioned these protections in matters involving internal corporate investigations to help ensure the proper provision of legal services. The protections afforded by these doctrines should apply in this case.

**A. The District Court's Order Ought to Be Reversed Based on Supreme Court Precedent Regarding the Attorney-Client Privilege in Internal Corporate Investigations.**

*Upjohn Co. v. United States*, 449 U.S. 383 (1981), remains the seminal case and leading opinion on the attorney-client privilege, and it involved the application of the privilege to an internal corporate investigation related to alleged payments by a corporation to foreign government officials. Then Justice William Rehnquist, writing for the Court, explained that the policy underlying the attorney-client privilege:

> The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. Its purpose is to encourage full and frank communication between attorneys and their clients, and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.

*Id.* at 389 (citation omitted). He continued, "the privilege exists to protect not only the giving of professional advice to those who can act on it, but also the giving of information to the lawyer to enable him to give sound and informed advice." *Id.* at 390. The Court held, "[i]n light of the vast and complicated array of regulatory legislation confronting the modern corporation, corporations, unlike most individuals, 'constantly go to lawyers to find out how to obey the law,' particularly since compliance with the law in this area is hardly an instinctive matter . . . ." *Id.* at 392 (quoting Bryson P. Burnham, *The Attorney-Client Privilege in the Corporate Arena*, 24 Bus. Law. 901, 913 (1969)). Brushing aside the attorney-client privilege here is an affront to that Supreme Court precedent, to the government's efforts to ensure that corporations adhere to law and regulation, and to corporations' abilities to conform their behavior to law and regulation. *See also In re Lott*, 424 F.3d 446, 450 (6th Cir. 2005) ("It is not hyperbole to suggest that the attorney-client privilege is a necessary foundation for the adversarial system of justice.").

**B.** **The District Court's Order Ought to Be Reversed Based on Supreme Court Precedent Regarding the Work-Product Doctrine in Internal Corporate Investigations.**

Supreme Court precedent also well establishes the work-product doctrine in the context of internal corporate investigations. *Hickman v. Taylor*, 329 U.S. 495 (1947), first recognized the work-product doctrine. That case involved an internal investigation in preparation for litigation related to a maritime accident in which opposing counsel sought access to the investigating attorney's work-product and impressions of the case. The Court emphasized that the doctrine is "essential" and that its loss would be "demoralizing" on the profession:

> In performing his various duties . . . , it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories, and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests . . . . Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness, and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Id.* at 510-11. The doctrine has been memorialized in Rule 26(b)(3) of the Federal Rules of Civil Procedure, which protects from discovery documents and tangible

things prepared in anticipation of litigation by or for a party or by or for that party's representative.

As held by the Sixth Circuit in *United States v. Roxworthy*, for work-product to be "in anticipation of litigation," it must have occurred "because of" the anticipated litigation. *United States v. Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006). The "because of" test requires a Court to consider "(1) whether a document was created because of a party's subjective anticipation of litigation, as contrasted with an ordinary business purpose, and (2) whether that subjective anticipation of litigation was objectively reasonable." *Id.* Importantly, the Sixth Circuit held that "a document can be created for both use in the ordinary course of business and in anticipation of litigation without losing its work-product privilege." *Id.* at 599. The test does **not** require anticipated litigation to be the "sole purpose" for having prepared the document. *Id*.

As discussed in Part II of this brief, the internal investigation was the reasonable, foreseeable, and natural result of the anticipated and pending government investigations and lawsuits in this matter. Consequently, the materials generated meet the "because of" standard for "in anticipation of litigation," even if they were later used in making other decisions, which is commonly what occurs.

**C.**    **The District Court's Order Ought to Be Reversed Because the Reasons for the Attorney-Client Privilege and Work-Product Doctrine Far Outweigh the Plaintiffs' Admitted Lack of Need for the Requested Documents.**

The important interests undergirding attorney-client privilege and work-product in the context of internal corporate investigations far outweigh the Plaintiffs' admitted lack of need for the requested documents in building their case. The Plaintiffs stated in their Memorandum of Law in Opposition to First Energy's Motion for Certification of an Order for Interlocutory Appeal, "[t]his is a strong case supported by overwhelming evidence regardless of the Court's decision . . . ." *See* Pls. Opp., ECF No. 664, at PageID 14422. They also assert, "they have already assembled sufficient evidence to prove their claims . . . ." *Id.* at 14423. Assuming these assertions are true, then by the Plaintiffs' own admission, the discovery process is working, and no need exists to disturb well-established Supreme Court precedent that the attorney-client privilege and the work-product doctrine apply to internal corporate investigations, especially considering the important policy reasons for those protections in the corporate context, which is discussed more fully in Part IV.

Based on its well-established precedent, the Supreme Court has also held that mandamus is an appropriate result for erroneous privilege determinations. *See Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009) ("We expect that the combination of standard postjudgment appeals, § 1292(b) appeals, mandamus, and

contempt appeals will continue to provide adequate protection to litigants ordered to disclose materials purportedly subject to the attorney-client privilege."); *see also Chesher v. Allen*, 122 Fed Appx. 184, 187 (6th Cir. 2005) ("[W]e have said that mandamus is particularly appropriate to review discovery decisions that would not be appealable until final judgment, especially decisions related to privileges."). As a result, the writ of mandamus ought to be granted, and the District Court's denial of attorney-client privilege and work-product doctrine protection in this case ought to be reversed.

## II. To the Extent that it is Relevant to the Work-Product Doctrine, Internal Corporate Investigations for Purposes of Obtaining Legal Advice and Preparing for Litigation Are an Expected and Predictable Result of Anticipated and Pending Government Investigations and Lawsuits.

For-profit corporations do not conduct internal investigations with outside counsel for fun. They hire outside counsel to conduct internal investigations when they need legal expertise, not business advice. Because of the time and expense, these investigations occur because of circumstances in which significant or even existential threats to the corporation exist and when compliance with the law compels management to do so. *See* Sarah Helene Duggin, *Internal Corporate Investigations: Legal Ethics, Professionalism and the Employee Interview*, 2003 COLUM. BUS. L. REV. 859, 863-64 (2003) ("[T]he internal investigation has become

a hallmark of corporate legal practice. An internal investigation is an inquiry conducted by, or on behalf of, an organization in an effort to discover salient facts pertaining to acts or omissions that may generate civil or criminal liability."). The threat of litigation is a predominant and significant reason why internal investigations with outside counsel are conducted, especially in high-profile matters similar to the case before the Court. In the current case, the work-product created by outside counsel was prompted by government enforcement actions and the filing of numerous lawsuits.[3] During the investigation, attorney-client communications to

---

[3] The Defendants in this matter recount the undisputed facts in this matter in their Motion for Certification of an Order of Interlocutory Appeal:

> Here, the following facts are undisputed: beginning the same day as the unsealing of a criminal complaint against then-Ohio House Speaker Larry Householder, FirstEnergy (i) was served a DOJ subpoena; (ii) received a formal investigation notice from the SEC; and (iii) learned that nine law firms planned to imminently file investor suits. (*See* App. A to FirstEnergy's Opp. Br., ECF No. 510 at PageID 10930–32; Exs. 12–20 to July 26, 2023 Williams Decl., ECF No. 511-2 at PageID 11000–21.) FirstEnergy and its board separately retained Jones Day and Squire Patton Boggs, respectively, shortly thereafter to investigate the underlying facts and circumstances. (*See* FirstEnergy's Objections, ECF No. 607-1 at PageID 13179, 13200–01 & 13221–24 (identifying relevant record evidence); Ex. 2 to Oct. 5, 2023 Williams Decl., ECF No. 550-2 at PageID 11919–20 (Julia Johnson Dep. Tr.); DPA, ECF No. 259-5 at PageID 6002, 6012.) Both outside firms promptly commenced their investigations, with Jones Day continuing to represent the company in connection with the DOJ litigation ***and this litigation***. (*See* App. A to FirstEnergy's Opp. Br., ECF No. 510 at PageID 10930.).

outside counsel were necessary to facilitate that investigation and to ensure future compliance with the law. Regardless, attorney-client privilege also extends protection to other circumstances in which legal advice is sought, even when no litigation is pending or anticipated. *See Swidler Berlin v. United States*, 524 U.S. 399, 409 (1998) (holding although attorney-client privilege may apply, "a client may not know at the time he discloses information to his attorney whether it will later be relevant to a civil or a criminal matter, let alone whether it will be of substantial importance").

No doubt exists as to why the law firms involved in this matter were retained. Squire Patton Boggs, one of the two law firms retained to conduct the internal investigations at issue, describes their Government Investigation & White Collar Practice: "Using our formidable global resources, insight into government and geographic presence, we are able to quickly identify the appropriate team to handle all phases of an investigation, any subsequent Congressional inquiries or civil or criminal actions, including class and multijurisdictional mass actions, while at the same time help clients focus on future developments, whether regulatory or

---

*See* FirstEnergy's Mot. for Certification of an Order for Interlocutory Appeal Under 28 U.S.C. § 1292(b) and for Stay Pending Appellate Review, ECF No. 649-2 at 14375.

legislative in nature."[4]  Jones Day, the other of the two law firms who were retained to conduct the internal investigations, describes their White Collar Defense Practice on their website as follows:  "Clients turn to us for defense in criminal investigations, parallel regulatory investigations, shareholder litigation, state attorneys general actions, licensing inquiries, asset freeze and forfeiture proceedings, civil false claims and qui tam suits, and suspension and debarment actions."[5]  In fact, the predominant and significant purpose of these internal investigations as preparation for litigation is so beyond dispute that it is remarkable that the District Court did not take judicial notice of it.[6]  Conducting an internal investigation relating to the government enforcement actions and the filing of numerous lawsuits in this matter was as predictable as the sun rising.

Claiming that an internal investigation must occur solely for the purpose of litigation to invoke the attorney-client privilege and work-product doctrine is a

---

[4] Government Investigations & White Collar, Squire Patton Boggs (last visited Aug. 5, 2024), https://www.squirepattonboggs.com/en/services/practice-areas/governmentinvestigations.

[5] Investigations & White Collar Defense, JonesDay (last visited July 19, 2024), https://www.jonesday.com/en/practices/investigations--white-collar-defense?tab=overview.

[6] Fed. R. Evid. 201(b). Kinds of Facts That May Be Judicially Noticed. The court may judicially notice a fact that is not subject to reasonable dispute because it:
    (1) is generally known within the trial court's territorial jurisdiction; or
    (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

grievous mistake and not in accord with the law. The results of these investigations are invariably going to flow through a myriad of other business decisions because of the significance of internal investigations in the life of the company. With that said, in this case, a significant and existential threat faced this corporation as a result of government enforcement actions and the filing of numerous lawsuits. Because of this, the use of an internal investigation to prepare for this litigation was beyond question in this matter. Moreover, no one should forget that even in the absence of pending and anticipated litigation, corporations will often need legal advice, and the attorney-client privilege protects the communications related to such advice. *See United States v. Bartone*, 400 F.2d 459, 461 (6th Cir.1968) ("[T]he attorney-client privilege extends to corporations.").

Permitting the Special Master's decision in this matter to stand would lead to bizarre and embarrassing results for the District Court in this litigation. As the Defendants wrote in their Motion for Certification of an Order for Interlocutory Appeal, the Special Master *sua sponte* ruled that the declaration providing context in this matter was inadmissible, despite what occurred elsewhere in this litigation:

> In this very case, Plaintiffs were permitted to rely on a declaration that lacked the words 'true and correct.' (*See* FirstEnergy's Notice Of Supplemental Authority and Record Citations, ECF No. 649-2 at PageID 14230.) Plaintiffs also submitted three other declarations that were not subscribed under penalty of perjury, again without issue. (*Id.* at PageID 14230–32.) True, Defendants did not object to these

> declarations.  But neither did Plaintiffs object to the O'Neil Declaration
> before the Special Master *sua sponte* ruled it inadmissible.

*See* FirstEnergy's Mot. for Certification of an Order for Interlocutory Appeal Under 28 U.S.C. § 1292(b) and for Stay Pending Appellate Review, ECF No. 649-2 at 14375.  In addition to this inconsistent and inequitable result, if this Court permits that holding to stand, the declarant of the declaration in question—or someone similarly situated—will be called to testify about the investigation, and he will immediately declare under oath and under penalty of perjury that the internal investigation occurred because of anticipated and pending government investigations and lawsuits.  This will leave the District Court Judge in the unenviable position of claiming that he could not have anticipated the reason for these internal investigations ahead of time, which seems fanciful.  This result is the type of vignette that law professors and law students like to use to start off law review articles because the strangeness of the interaction suggests that it should not occur.

Regardless, internal corporate investigations for purposes of obtaining legal advice and preparing for litigation are an expected result of anticipated and pending government investigations and lawsuits, especially in the current case.  As a result, attorney-client privilege and work-product doctrine ought to apply to this matter and the holding of the District Court should be reversed.

**III. Even if the Communications in This Case Did Not Occur in Anticipation of Litigation, the Attorney-Client Privilege Should Still Apply to Communications for Obtaining Legal Advice Relating to Compliance with Securities Regulation, Employment Law, and Contract Law.**

Law is practiced beyond the courthouse walls—and when it is most successful, it avoids the need to go to court at all. Courts and litigators sometimes forget this reality, especially because it means that their services may not be needed.

When lawyers practice law outside of the courthouse, the attorney-client privilege regularly applies, even in the absence of pending or anticipated litigation. The Sixth Circuit has held:

> "The elements of the attorney-client privilege are as follows: (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived."

*Reed v. Baxter*, 134 F.3d 351, 355–56 (6th Cir. 1998) (quoting *Fausek v. White*, 965 F.2d 126, 129 (6th Cir. 1992)). None of these elements suggests that attorney-client privilege exists only in instances involving litigation. The attorney-client privilege extends its protection to a vast array of circumstances in which legal advice is sought, even when no litigation is pending or anticipated. This scope includes internal investigations conducted by corporate counsel for purposes of rendering legal advice. *See In re Behr Dayton Thermal Products*, LLC, 298 F.R.D. 369, 373 (S.D.

Ohio 2013) ("The [attorney-client] privilege applies to factual investigations conducted by counsel at a corporate client's request (to provide legal advice to that client), and also to agents of an attorney who are assisting in rendering legal advice to the client."). As explained in Part IV below, the existence of attorney-client privilege beyond litigation is necessary for the ethical and efficient operation of corporations.

In this case, the District Court and Special Master have been fixated on whether the internal investigations occurred in anticipation of litigation. The Special Master applied the same test for assessing the attorney-client privilege and work-product doctrine by erroneously concentrating on the anticipation of litigation in the context of attorney-client privilege. Order by Special Master on Mot. to Compel, ECF No. 571, at PageID 12384-86. The real issue for attorney-client privilege protection is whether the communication occurred for purposes of obtaining legal advice.

The Special Master held, and the District Court affirmed that the internal investigations were used for purposes of complying with securities regulation, employment law, and contract law. The Special Master wrote, "The record evidence presented by Plaintiffs in their briefing . . . supports that the internal investigation was conducted for audit/SEC filing purposes and for human resources decisions/public relations benefit . . . ." Order by Special Master on Mot. to Compel,

at PageID 12384. Erroneously applying the wrong standard, the Special Master held, "the undersigned must conclude that the attorney-client privilege does not apply to render the discovery sought unreachable." *Id.* at PageID at 12386. Even if the legal advice was not sought in anticipation of litigation—although the undisputed facts suggest otherwise—these communications are still eligible for attorney-client privilege protection. *See United States v. Nobles*, 422 U.S. 225, 238 (1975) (holding that "[a]s the Court recognized in *Hickman v. Taylor*, 329 U.S., at 508, 67 S.Ct., at 392," the work-product doctrine is "distinct" from the attorney-client privilege).

The District Court's denial of protection is contrary to the well-established Supreme Court precedent discussed in Part I regarding the attorney-client privilege. Focusing on the anticipation of litigation was a patent misapplication of the test for the attorney-client privilege that demands correction. Allowing the District Court's order to stand would reduce the chances of preventing violations of the law, because corporate managers will be less likely to seek legal advice, if it is may be subject to discovery. As a result, the holding of the District Court should be reversed.

**IV.  Protecting Internal Investigations from Discovery Under the Attorney-Client Privilege and Work-Product Doctrine Is Essential to the Ethical and Efficient Operation of Corporations.**

The ruling of the District Court must also be reversed because the attorney-client privilege and the work-product doctrine are essential to the ethical and efficient operation of corporations, especially in the context of internal corporate investigations.  The attorney-client privilege and the work-product doctrine are necessary to allow corporate managers to uphold their fiduciary duties, to make better business judgments, and to rely on attorneys as trusted advisers.

**A.  Protecting Internal Investigations Under the Attorney-Client Privilege and Work-Product Doctrine Is Necessary to Allow Directors and Officers to Meet Their Fiduciary Duties of Care and Good Faith.**

Failing to afford attorney-client privilege and work-product doctrine protection in this case will imperil the ability of directors and officers to meet their fiduciary duties of good faith and care that are mandated under Ohio law.[7]  Under the duties of care and good faith in Ohio, directors and officers are required to

---

[7] FirstEnergy is an Ohio corporation.  *See* FirstEnergy Corp., Annual Report (Form 10-K), at (Feb. 13, 2024) (listing FirstEnergy Corporation as an Ohio corporation).

undertake reasonable efforts to inform themselves. In regard to directors, Ohio Revised Code Section 1701.59(B) provides:

> A director shall perform the director's duties as a director, including the duties as a member of any committee of the directors upon which the director may serve, in good faith, in a manner the director reasonably believes to be in or not opposed to the best interests of the corporation, and with the care that an ordinarily prudent person in a like position would use under similar circumstances.

In honoring these duties, Ohio Revised Code Section 1701.59(B) states that a director in Ohio is entitled "to rely on information, opinions, reports, or statements [of] . . . [c]ounsel." *Id.* Officers are held to a similar standard under Ohio Revised Code Section 1701.641.

Finding no attorney-client privilege or work product doctrine protection in this case, as the District Court did, sets a dangerous precedent that interferes with directors' and officers' abilities to meet their fiduciary duties in Ohio. When faced with government enforcement actions and the filing of numerous lawsuits, "an ordinarily prudent person in a like position . . . under similar circumstances" would immediately contact an attorney to help them understand the legal realities facing the corporation. *See* Revised Code § 1701.59(B). If this Court affirms the District Court's opinion, directors and officers would now be forced to question whether they should contact an attorney because the attorney could simply be creating a case for the government and other opposing parties.

In addition, if there were doubt about whether these protections apply to internal investigations, counsel for corporations, their management, employees, and other agents would now have to be significantly more guarded and less candid in their communications. This would interfere with the ethical and efficient internal operations of corporations, and with lawyers providing advice to assist corporations in adhering to the law. In short, if the District Court's order is affirmed, it would become much easier on government officials and opposing counsel because they could rely on the corporation and its counsel to do their work, but it would become extremely difficult for directors and officers to meet their fiduciary duty to reasonably inform themselves. Requiring paid government and private attorneys to do their own work in preparing their cases is a small price to pay to ensure that directors and officers can meet their fiduciary duties.

**B.     Protecting Internal Investigations Under the Attorney-Client Privilege and Work-Product Doctrine Is Necessary to Allow Directors and Officers to Make Better Business Judgments.**

The District Court's brushing aside of both the attorney-client privilege and work-product doctrine ought to be reversed because directors and officers need to be able to avail themselves of legal advice to make better business judgments, and the District Court's order interferes with that objective. The business judgment rule

requires that directors and officers be reasonably informed before making important business decisions. And when those business decisions implicate legal concerns, it is difficult to see how directors or officers could comply with their duties of care and good faith and obtain the protection of the business judgment rule unless they are permitted to receive candid legal advice in confidence. When a business decision involves compliance with the law or dealing with the consequences of a violation of the law, there is a strong societal interest in encouraging corporate managers to avail themselves of privileged communications with experienced counsel. Confidential communications for the purpose of obtaining legal advice in the context of litigation or outside of it are necessary for ongoing legal compliance. That is especially true if a firm has been put on notice that a third party—government or private—questions the legality of its conduct.

If one wants corporations to make **smart** decisions, the protections of the attorney-client privilege and the work-doctrine are a must, even if the business judgment rule might protect the corporation when making some foolish decisions. Under Ohio law, courts will not inquire into the wisdom of a business decision absent fraud, bad faith, or abuse of discretion—i.e., a breach of fiduciary duty. *See Maas v. Maas*, 161 N.E.3d 863, 872 (Ohio Ct. App. 2020) ("Ohio courts adhere to the 'business judgment rule.' Under that rule, courts will not inquire into the wisdom of actions taken by the directors in the absence of fraud, bad faith, or

abuse of discretion" (citing *Koos v. Cent. Ohio Cellular, Inc.*, 94 Ohio App.3d 579, 589, 641 N.E.2d 265 (8th Dist.1994))). Ohio's version of the business judgment rule is codified in Ohio Revised Code Section 1701.59(D)(1), which provides: " A director shall not be found to have violated the director's duties . . . unless it is proved by clear and convincing evidence that the director has not acted in good faith, in a manner the director reasonably believes to be in or not opposed to the best interests of the corporation, or with the care that an ordinarily prudent person in a like position would use under similar circumstances . . . ." The business judgment rule, or business judgment presumption as it is sometimes termed, rests on various policy rationales, including that judges are typically not business people; directors and officers have greater knowledge of the particular corporation and the business environment in which the corporations operate; directors and officers are chosen decision-makers within the corporation based on corporate democracy; many business decisions are made in situations involving significant uncertainty; and risk taking has benefits to corporations and society. *See Radol v. Thomas*, 772 F.2d 244, 257 (6th Cir. 1985) ("The business judgment rule recognizes that many important corporate decisions are made under conditions of uncertainty, and it prevents courts from imposing liability on the basis of ex post judicial hindsight and lowers the volume of costly litigation challenging directorial actions.").

As detailed in the previous section, to gain the benefit of the business judgment presumption and to promote the ethical and efficient operation of corporations, directors and officers have fiduciary duties of care and good faith to reasonably inform themselves, which requires them to seek legal advice in the event of anticipated or pending government investigations and lawsuits. The attorney-client privilege is crucial to allowing directors and officers to seek legal advice and be sufficiently counseled to meet these duties of care and good faith.

Providing the protection of both the attorney-client privilege and the work-product doctrine allows directors and officers to make better informed and wiser decisions. Assuming that directors and officers have met their fiduciary duties of good faith and care by reasonably informing themselves, the business judgment rule protects them even if their decisions seem foolish in hindsight. *See Stepak v. Schey*, 553 N.E.2d 1072, 1076 (Ohio 1990) (Holmes, J., concurring) ("In evaluating a director's compliance with the duty of care, Ohio courts follow the 'business judgment rule,' and will not usually inquire into the wisdom of actions taken by the director in the absence of fraud, bad faith or abuse of discretion."). With that said, however, courts should not want or help to facilitate foolish decisions to occur. The law should encourage lawyers to help their clients reach sound business judgments through full and complete communication with them. How can a director or manager be expected to make good business judgments about matters with legal

implications if the person is not permitted to confer with counsel in confidence? This is why the Supreme Court has extended the attorney-client privilege and work-product doctrine to internal investigations related to anticipated and pending government investigations and lawsuits.

Importantly, courts must act predictably and consistently in applying these doctrines so that lawyers and corporate clients can rest assured, **in advance**, that their communications will remain privileged. As the Supreme Court has held, an unpredictable privilege is little better than no privilege at all. *See Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981) ("An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all."). In the absence of a predictable attorney-client privilege and work-product doctrine in this Circuit, candid communications between corporations and their counsel would be chilled in the very occasions when they are needed the most.

The District Court's ruling ought to be reversed. Requiring plaintiffs' counsel to do their own work to prepare their case is a small price to pay to ensure that directors and officers can make better business judgments and meet their fiduciary duties of good faith and care. In this case, the directors and officers sought to make well-informed business judgments about critical issues facing FirstEnergy arising out of anticipated and pending government investigations and lawsuits. Robbing

them or similarly situated directors and officers of robust legal counsel during such a time of crisis will lead to corporations making bad decisions with disastrous results for their shareholders, other stakeholders, and the communities that surround them.

C.     **Protecting Internal Investigations Under the Attorney-Client Privilege and Work-Product Doctrine Is Necessary to Allow Lawyers to Operate as Trusted Advisers.**

The analytic rigors of law school make those with legal training uniquely capable of negotiating the trials and tribulations of life. The attorney-client privilege and work-product doctrine help to facilitate full and honest communication among lawyers and their clients. *See Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981) ("[The] purpose [of attorney-client privilege] is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."); *Hickman v. Taylor*, 329 U.S. 495, 511 (1947) ("Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial [in the absence of the work-product doctrine]. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served."). Consequently, these doctrines are essential to the ethical and efficient management of corporations.

In addition, the application of these doctrines in subsequent legal proceedings must be predictable prior to the communications being made because otherwise there will be a strong disincentive to seek useful legal advice from lawyers. *See Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981) ("[I]f the purpose of the attorney–client privilege is to be served, the attorney and client must be able to predict with some degree of certainty whether particular discussions will be protected."). These doctrines help lawyers to become trusted advisers to businesspeople and facilitate compliance with the law. In their absence, lawyers will be unwilling to give their unvarnished advice and opinions to their clients, and clients will treat their lawyers as threats and adversaries. Because the District Court's ruling would inject substantial uncertainty into the relationship between lawyers and their corporate clients, and thereby undermine it, the District Court's order should be reversed

# CONCLUSION

For the foregoing reasons, the amici curiae believe the petition for a writ of mandamus should be granted, and the order of the District Court should be reversed.

Respectfully submitted,

/s/ Eric C. Chaffee
ERIC C. CHAFFEE
CASE WESTERN RESERVE
UNIVERSITY SCHOOL OF LAW
11075 East Boulevard
Cleveland, OH 44106
216-368-2768
Eric.Chaffee@Case.edu

*Counsel for Amici Curiae*

AUGUST 5, 2024

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 29 because it contains 6,097 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14-point font.

/S/ ERIC C. CHAFFEE
ERIC C. CHAFFEE
CASE WESTERN RESERVE UNIVERSITY
SCHOOL OF LAW
11075 East Boulevard
Cleveland, OH 44106
216-368-2768
Eric.Chaffee@Case.edu

*Counsel for Amici Curiae*

AUGUST 5, 2024

# CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of August 2024, I caused the foregoing Amicus Curiae Brief of Corporate Law and Legal Ethics Scholars in Support of FirstEnergy Corp. and Reversal to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

/S/ ERIC C. CHAFFEE
ERIC C. CHAFFEE
CASE WESTERN RESERVE UNIVERSITY
SCHOOL OF LAW
11075 East Boulevard
Cleveland, OH 44106
216-368-2768
Eric.Chaffee@Case.edu

*Counsel for Amici Curiae*

AUGUST 5, 2024