IN THE

# United States Court of Appeals
# For the Sixth Circuit

IN RE FIRSTENERGY CORP. SECURITIES LITIGATION,

**On Petition for a Writ of Mandamus to the
United States District Court
for the Southern District of Ohio
No. 2:20-cv-3785
Hon. Algenon L. Marbley**

**BRIEF FOR 39 LAW FIRMS AS AMICI CURIAE**

Brendan F. Quigley
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112
Telephone: 212.408.2520
Facsimile: 212.259.2520
brendan.quigley@bakerbotts.com

Roy T. Englert, Jr.
Matthew M. Madden
Mark H. Russell
KRAMER LEVIN NAFTALIS &
FRANKEL LLP
2000 K Street NW, 4th Floor
Washington, DC 20006
Telephone: 202.471.3043
Facsimile: 202.775.4510
renglert@kramerlevin.com

*Counsel for Amici Curiae*
*(Additional Counsel Listed on Additional Pages)*

August 5, 2024

Joel D. Bertocchi
AKERMAN LLP
71 South Wacker Drive
Chicago, IL 60606
Telephone: 312.870.8026
joel.bertocchi@akerman.com

William Devaney
BAKER & McKENZIE LLP
452 Fifth Avenue
New York, NY 10018
Telephone: 212.626.4337
william.devaney@bakermckenzie.com

Peter P. Tomczak
BAKER & McKENZIE LLP
300 East Randolph Street, Suite 5000
Chicago, IL 60601
Telephone: 312.861.8030
peter.tomczak@bakermckenzie.com

Marnin J. Michaels
BAKER McKENZIE SWITZERLAND AG
Holbeinstrasse 30
Zurich 8034
Switzerland
Telephone: 41 44 384 12 08
marnin.michaels@bakermckenzie.com

John S. Hicks, Shareholder and
General Counsel
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ PC
1600 West End Avenue, Suite 2000
Nashville, TN 37203
Telephone: 615.726.5600
jhicks@bakerdonelson.com

William S. Snyder
BRADLEY ARANT BOULT CUMMINGS
LLP
1445 Ross Avenue, Suite 3600
Dallas, TX 75202
Telephone: 214.257.9814
wsnyder@bradley.com

Laura R. Giokas
Ameer Gado
BRYAN CAVE LEIGHTON PAISNER LLP
211 North Broadway, Suite 3600
St. Louis, MO 63102
Telephone: 314.259.2153
laura.giokas@bclplaw.com
Telephone: 314.259.2745
ameer.gado@bclplaw.com

Mary Elizabeth Taylor
General Counsel
CADWALADER, WICKERSHAM & TAFT
LLP
200 Liberty Street
New York, NY 10281
Telephone: 212.504.6960
beth.taylor@cwt.com

Anirudh Bansal
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, NY 10005
Telephone: 212.701.3207
abansal@cahill.com

Celeste L.M. Koeleveld
Rijie Ernie Gao
CLIFFORD CHANCE US LLP
Two Manhattan West
375 9th Avenue,
New York, NY 10001
Telephone: 212.878.8000
celeste.koeleveld@cliffordchance.com
ernie.gao@cliffordchance.com

Andrew D. Goldstein
COOLEY LLP
1299 Pennsylvania Avenue, NW Suite
700
Washington, DC 20004
Telephone: 202.842.7805
agoldstein@cooley.com

Thomas G. Wilkinson, Jr.
Stephen A. Miller
COZEN O'CONNOR
One Liberty Place
1650 Market Street Suite 2800
Philadelphia, PA 19103
Telephone: 212.665.2000
twilkinson@cozen.com
samiller@cozen.com

Elisha A. King
General Counsel
DLA PIPER LLP (US)
500 Eighth Street, NW
Washington, DC 20004
Telephone: 202.799.4254
elisha.king@dlapiper.com

James R. Clark
Partner and General Counsel
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202
Telephone: 414.271.2400
jclark@foley.com

Anthony D. Mirenda
FOLEY HOAG LLP
155 Seaport Boulevard, Suite 1600
Boston, MA 02210
Telephone: 617.832.1220
adm@foleyhoag.com

Mary Eaton
Meredith Kotler
FRESHFIELDS BRUCKHAUS DERINGER
US LLP
175 Greenwich Street, 51st Floor
New York, NY 10007
Telephone: 212.277.4007
mary.eaton@freshfields.com
meredith.kotler@freshfields.com

Martin I. Kaminsky
Chief Legal Officer
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, NY 10017
Telephone: 212.801.6892
kaminskym@gtlaw.com

Stacy L. Brainin
General Counsel
HAYNES AND BOONE, LLP
2801 N. Harwood Street, Suite 2300
Dallas, TX 75201
Telephone: 214.651.5584
stacy.brainin@haynesboone.com

Sean Hecker
John C. Quinn
Kate L. Doniger
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Telephone: 212.763.0883
shecker@heckerfink.com
jquinn@heckerfink.com
kdoniger@heckerfink.com

Michael E. Salzman
HUGHES HUBBARD & REED LLP
One Battery Park Plaza, Floor 15
New York, NY 10004
Telephone: 212.837.6833
michael.salzman@hugheshubbard.com

Jeffrey B. Maletta
General Counsel
K&L GATES LLP
1601 K Street, NW
Washington, DC 20006
Telephone: 202.778.9000
jeffrey.maletta@klgates.com

Michael I. Verde
KATTEN MUCHIN ROSENMAN LLP
50 Rockefeller Plaza
New York, NY 10020
Telephone: 212.940.8541
michael.verde@katten.com

Susan M. Spaeth
Partner and Chief Legal Officer
KILPATRICK TOWNSEND & STOCKTON
LLP
1302 El Camino Real, Suite 175
Menlo Park, CA 94025
Telephone: 650.324.6335
sspaeth@ktslaw.com

John P. Brumbaugh
Partner and Co-General Counsel
KING & SPALDING LLP
1180 Peachtree Street NE, Suite 1600
Atlanta, GA 30309
Telephone: 404.572.4617
pbrumbaugh@kslaw.com

Mark E. Schneider, P.C.
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: 312.862.2253
mark.schneider@kirkland.com

Jennifer A. Kenedy
LOCKE LORD LLP
111 S. Wacker Drive, Suite 4100
Chicago, IL 60606
Telephone: 312.443.0377
jkenedy@lockelord.com

Mary Lou Soller
Member and Firm Counsel
MILLER & CHEVALIER CHARTERED
900 16th Street NW
Black Lives Matter Plaza
Washington, DC 20006
Telephone: 202.626.5800
msoller@milchev.com

Daniel S. Sanders, Jr.
Partner and General Counsel
NELSON MULLINS RILEY &
SCARBOROUGH LLP
Atlantic Station
201 17th Street NW, Suite 1700
Atlanta, GA 30363
Telephone: 404.322.6000
dan.sanders@nelsonmullins.com

William Connolly, General Counsel
Robert Fisher
NIXON PEABODY LLP
Exchange Place, 53 State Street
Boston, MA 02109
Telephone: 617.345.1171
wconnolly@nixonpeabody.com
Telephone: 617.345.1335
rfisher@nixonpeabody.com

Kevin J. Harnisch
NORTON ROSE FULBRIGHT US LLP
799 9th Street NW, Suite 1000
Washington, DC 20001
Telephone: 202.662.4520
kevin.harnisch@nortonrosefulbright.com

Sandeep Savla
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019
Telephone: 212.318.3159
sandeep.savla@nortonrosefulbright.com

Martin S. Checov
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone: 415.984.8713
mchecov@omm.com

Ronald L. Francis, Jr.
REED SMITH LLP
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
Telephone: 412.288.7234
rfrancis@reedsmith.com

Jillian Weinstein
O'MELVENY & MYERS LLP
400 South Hope Street, Suite 1900
Los Angeles, CA 90071
Telephone: 213.430.8198
jweinstein@omm.com

Peter J. Kennedy
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071
Telephone: 213.457.8062
pkennedy@reedsmith.com

Peter C. Erichsen
ROPES & GRAY LLP
800 Boylston Street
Boston, MA 02199
Telephone: 617.951.7098
peter.erichsen@ropesgray.com

Harry S. Davis
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, NY 10022
Telephone: 212.756.2222
harry.davis@srz.com

Lori L. Roeser
SEYFARTH SHAW LLP
233 S. Wacker Drive, Suite 8000
Chicago, IL 60606
Telephone: 312.460.5258
lroeser@seyfarth.com

Robert F. Carangelo
Jessie B. Mishkin
WEIL, GOTSHAL & MANGES LLP
767 Fifth Ave
New York, NY 10153
Telephone: 212.310.8000
robert.carangelo@weil.com
jessie.mishkin@weil.com

Tariq Mundiya
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
Telephone: 212.728.8565
tmundiya@willkie.com

Jaime L. Theriot
TROUTMAN PEPPER HAMILTON
SANDERS LLP
600 Peachtree Street, N.E., Suite 3000
Atlanta, GA 30308
Telephone: 404.885.3534
jaime.theriot@troutman.com

Jennifer Paradise
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: 212.819.8200
jparadise@whitecase.com

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................... ii

INTEREST OF *AMICI CURIAE* ............................................................................ 1

INTRODUCTION .................................................................................................. 2

ARGUMENT ......................................................................................................... 5

    I.    The District Court Applied The Wrong Legal Standard When Determining Whether Internal Investigation Documents Are Privileged ..................................................................................... 5

        A.    The District Court Erred By Treating The Motive As To Why An Investigation Began As Dispositive As To Whether The Privilege Applies ................................................................. 5

        B.    The District Court's Undefined Conception Of "Legal" Motivation Undermines The Privilege ................................. 10

    II.    The District Court Incorrectly Concluded That Dual-Purpose Documents Are Not Protected Work-Product ........................... 12

    III.  Mandamus Is An Appropriate Remedy In This Case ............................... 14

CONCLUSION ...................................................................................................... 15

APPENDIX: LIST OF *AMICI CURIAE* ............................................................ A-1

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alomari v. Ohio Dep't of Pub. Safety*,
  626 F. App'x 558 (6th Cir. 2015) ............................................................5, 6, 11

*Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*,
  964 F.2d 159 (2d Cir. 1992) ............................................................15

*In re Cnty. of Erie*,
  473 F.3d 413 (2d Cir. 2007) ............................................................5, 11

*In re Grand Jury*,
  23 F.4th 1088 (9th Cir. 2021) ............................................................6

*Hickman v. Taylor*,
  329 U.S. 495 (1947)............................................................3

*In re Itron, Inc.*,
  883 F.3d 553 (5th Cir. 2018) ............................................................15

*Jenson v. Eveleth Taconite Co.*,
  130 F.3d 1287 (8th Cir. 1997) ............................................................10

*In re Kellogg Brown & Root, Inc.*,
  756 F.3d 754 (D.C. Cir. 2014)............................................................2, 6, 7, 8, 15

*In re Lott*,
  424 F.3d 446 (6th Cir. 2005) ............................................................12, 15

*Mohawk Indus., Inc. v. Carpenter*,
  558 U.S. 100 (2009)............................................................14

*Reed v. Baxter*,
  134 F.3d 351 (6th Cir. 1998) ............................................................5, 11

*Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*,
  32 F.3d 851 (3d Cir. 1994) ............................................................12

*United States v. Adlman*,
  134 F.3d 1194 (2d Cir. 1998) ............................................................13

*United States v. Roberts*,
84 F.4th 659 (6th Cir. 2023) ............................................................6, 7

*United States v. Roxworthy*,
457 F.3d 590 (6th Cir. 2006) ...............................................................13

*United States v. Sadler*,
24 F.4th 515 (6th Cir. 2022) .................................................................6

*Upjohn Co. v. United States*,
449 U.S. 383 (1981).........................................................2, 3, 6, 7, 12

**Statutes**

Fed. R. Civ. P. 26(b)(3).....................................................................4, 13

**Other Authorities**

*2023 Annual Report Statistics,* https://corp.delaware.gov/stats/ ..............................9

Justice Manual § 9-28 ...........................................................................2

Justice Manual § 9-47 ...........................................................................2

Paul R. Rice, 1 Attorney-Client Privilege in the United States § 7:18
(2023)..................................................................................................12

Hon. Leo E. Strine, Jr., *The Dangers of Denial: The Need for a Clear-
Eyed Understanding of the Power and Accountability Structure
Established by the Delaware General Corporation Law*, 50 Wake
Forest L. Rev. 761 (2015)......................................................................9

Andrew Weissmann & David Newman, *Rethinking Criminal
Corporate Liability*, 82 Ind. L.J. 411 (2007) ........................................9

# INTEREST OF *AMICI CURIAE*[1]

*Amici*, listed in the Appendix to the brief, are law firms that companies frequently retain to conduct internal investigations and provide resulting legal advice. Those investigations are commenced for varied reasons, such as anticipated or pending litigation or whistleblower complaints. *Amici* have a strong interest in ensuring that the attorney-client privilege and work-product doctrine clearly protect from disclosure the confidential communications necessary to the success of these kinds of investigations. A weak or unpredictable privilege would stifle communication, impede investigations, and prevent attorneys from providing frank and effective legal advice to their corporate clients.

*Amici* have some of the preeminent investigations practices in the country. And their clients, often multi-national corporations, rely on them to conduct thorough internal investigations and provide valuable legal advice. *Amici*'s views, therefore, are based on years of experience in conducting highly sensitive high-stakes internal investigations for the largest corporations.

---

[1] No party's counsel authored this brief either in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting this brief; and no person—other than *amici curiae* and their counsel—contributed money that was intended to fund preparing or submitting the brief.

**INTRODUCTION**

Internal investigations conducted by outside counsel are an essential tool to address myriad issues that companies face.  In fact, many companies are required to maintain compliance programs in which such investigations are commonplace.  *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 759 (D.C. Cir. 2014) (Kavanaugh, J.). The Department of Justice (DOJ) also creates strong incentives for companies to conduct internal investigations.  When deciding whether to charge a corporation criminally, federal prosecutors must consider "the corporation's willingness to cooperate, including" identifying "potential wrongdoing by its current and former employees, directors, officers, and agents" and "the corporation's timely and voluntary self-disclosure of wrongdoing."  Justice Manual § 9-28.300; *see also* §§ 9-28.700, 9-28.900.  Similarly, for certain categories of cases, DOJ's official "Corporate Enforcement Policy" creates significant incentives—a presumption of declination of prosecution—for a company that voluntarily "self-discloses" misconduct, gives DOJ "full cooperation," and undertakes "timely and appropriate remediation," Justice Manual § 9-47.120—all of which, again, as a practical matter, requires some form of an internal investigation.

The Supreme Court has long recognized that communications with lawyers conducting such investigations are protected by the attorney-client privilege. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  As the Court has made clear,

allowing the free flow of such communications "promote[s] [the] broader public interests in the observance of law and administration of justice." *Id.* Moreover, when the investigations are occurring in the shadow of anticipated or pending litigation (which they often are), such communications and other investigative materials produced by counsel are protected by the work-product doctrine, which likewise promotes the interests of justice. *Hickman v. Taylor*, 329 U.S. 495, 511-12 (1947). The attorney-client privilege and work-product doctrine often work in tandem to allow lawyers to receive the information necessary to provide informed advice, to organize, review, and apply that information to legal precepts, and then to provide candid advice to their client.

The District Court, however, created new standards for when those protections apply. As to the privilege, it held that a corporation must have a "legal" purpose for *initiating* an internal investigation in order for it to protect any communications made during that investigation. As to work-product protection, it held that documents created because of litigation are not protected from disclosure if they also are intended to assist with business decisions.

Those purported legal principles are deeply mistaken, and if adopted would threaten the success of countless internal investigations necessary to the good governance of companies in the United States. They would also undermine the strength of the attorney-client relationship companies have with their counsel. The

District Court erred when determining whether the attorney-client privilege applied by examining the motivation for initiating an investigation, instead of examining whether particular communications during an investigation were to receive or provide legal advice. This Court and others have been clear: What matters is whether confidential communications were intended to give or get legal advice— *why* the client is seeking such legal advice is irrelevant to whether the communication is privileged. Making matters worse, the District Court failed to define what a "legal purpose" could be, simply differentiating it (incorrectly) from business or human-resource purposes.

The District Court also erred in its analysis of work-product protection. It failed to recognize that documents created with a dual business and legal purpose can be protected from subsequent disclosure by the work-product doctrine under Federal Rule of Civil Procedure 26(b)(3) as long as they were created in anticipation of litigation.

The District Court's holdings inject substantial uncertainty into both confidentiality safeguards, thereby undermining lawyers' ability to gather the information needed to advise their corporate clients and weakening internal investigations as an essential tool in ensuring corporate compliance. This Court should issue a writ of mandamus directing the District Court to withdraw its order.

# ARGUMENT

## I. THE DISTRICT COURT APPLIED THE WRONG LEGAL STANDARD WHEN DETERMINING WHETHER INTERNAL INVESTIGATION DOCUMENTS ARE PRIVILEGED

The District Court held that "the investigation's predominant purpose must be legal for the [attorney-client] privilege to apply" to communications between the company and its lawyers during that investigation. ECF No. 653 at 19 ("Op."). That standard is unsupported by case law, which establishes that the privilege applies to any confidential communication made to seek or provide legal advice no matter what initially motivated an investigation. Moreover, the District Court's new standard would imperil internal investigations with an unworkable and unpredictable standard, as demonstrated by its unavailing attempt to define what it means for an internal investigation to have a "legal purpose."

### A. The District Court Erred By Treating The Motive As To Why An Investigation Began As Dispositive As To Whether The Privilege Applies

The attorney-client privilege applies "[w]here legal advice of any kind is sought." *Reed v. Baxter*, 134 F.3d 351, 355 (6th Cir. 1998). Legal advice, moreover, broadly "involves the interpretation and application of legal principles to guide future conduct or to assess past conduct." *Alomari v. Ohio Dep't of Pub. Safety*, 626 F. App'x 558, 570 (6th Cir. 2015) (quoting *In re Cnty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007)).

To determine whether a communication is privileged, courts examine "whether the predominant purpose *of the communication* is to render or solicit legal advice." *United States v. Roberts*, 84 F.4th 659, 670 (6th Cir. 2023) (quoting *Alomari*, 626 F. App'x at 570) (emphasis added); *see also United States v. Sadler*, 24 F.4th 515, 557 (6th Cir. 2022) (stating an eight-factor test for determining "whether a *communication* is privileged") (emphasis added); *In re Grand Jury*, 23 F.4th 1088, 1092-93 (9th Cir. 2021) (applying a primary-purpose test "to attorney-client privilege claims for dual-purpose *communications*") (emphasis added); *Kellogg*, 756 F.3d at 760 (asking whether "obtaining or providing legal advice [was] *a* primary purpose of the *communication*") (second emphasis added).

Thus, documents and communications generated in an internal investigation are protected by the attorney-client privilege as long as they were intended to further the provision of legal advice from counsel. *See Upjohn*, 449 U.S. at 389. And that's true regardless of the reason why the corporation began an investigation.

The D.C. Circuit's decision in *Kellogg* is instructive. In that case, the district court had ordered the production of documents created during an internal investigation because the investigation "was mandated by regulation" and not "an exercise of company discretion." 756 F.3d at 758-59. The D.C. Circuit reversed. Then-Judge Kavanaugh's opinion explained that the reason a company initiated an internal investigation is not dispositive of whether documents created during that

investigation may be protected by the attorney-client privilege. Such an approach, the court of appeals explained, "would eradicate the attorney-client privilege" for businesses that are required to maintain compliance programs, and "limit the valuable efforts of corporate counsel to ensure their client's compliance with the law." *Id.* at 759 (quoting *Upjohn*, 449 U.S. at 392). The D.C. Circuit instead held that "the test boils down to whether obtaining or providing legal advice was one of the significant purposes *of the attorney-client communication*." *Id.* at 760 (emphasis added). Whenever a corporation uses an internal-investigation "to obtain or provide legal advice, the privilege will apply." *Id.*

The District Court here, like the district court overturned in *Kellogg,* erred by viewing the reason behind initiating an investigation as dispositive of whether any communication with counsel during that investigation could be privileged. Even worse, the District Court viewed itself as bound by Sixth Circuit precedent that did not even address internal investigations, claiming that this Court has "told us" that "an internal investigation's predominant purpose must be legal for the attorney-client privilege to apply." ECF No. 673 at 17 (citing *Roberts*, 84 F.4th at 670). But those questions—what motivated an internal investigation and whether a communication was made to seek or provide legal advice—are logically different and legally distinct. In fact, the District Court even agreed with FirstEnergy's argument that "legal advice is necessarily given . . . during internal investigations"

before denying that those communications would be privileged. Op. 19. Its failure to appreciate the distinction between the purpose of an investigation and the purpose of a communication was clear and manifest legal error, and great mischief will be launched if this Court does not promptly correct that error.

For example, some corporations are required to conduct investigations to remain eligible for government contracts or to otherwise comply with government regulations, and the District's Court's rule would leave such investigations unprotected. *See Kellogg*, 756 F.3d at 759. In fact, the District Court reasoned here that these communications lacked a "legal purpose" because they may have been motivated, in part, by the need to file reports with the Securities and Exchange Commission. Op. 18-19.

Communications during investigations initiated under a corporate policy likewise would be unprotected if a court later determined the overriding purpose of the investigation to be compliance with a human-resources policy instead of some legal purpose. *See* Op. 18-19. But companies often rely on outside counsel to conduct such investigations, and counsel need to be able to rely on the protection the privilege provides to collect all relevant information and actually ensure that the company is, in fact, complying.

Besides the categories explained by the court in *Kellogg*, such a rule if taken to its logical conclusion would put *all* internal investigations at risk. By law, in

Delaware at least,[2] a corporation *must always* act primarily to benefit its shareholders: as a former Chief Justice of the Delaware Supreme Court explained, "directors must make stockholder welfare their sole end." Hon. Leo E. Strine, Jr., *The Dangers of Denial: The Need for a Clear-Eyed Understanding of the Power and Accountability Structure Established by the Delaware General Corporation Law*, 50 Wake Forest L. Rev. 761, 768 (2015). In other words, it can always be said that corporations are primarily motivated by business, not "legal," concerns.

For example, as the Plaintiffs argued in this case,[3] using an internal investigation to stave off an indictment from the DOJ and avoid potentially ruinous harm could be considered a mere "business" concern, which would leave such investigations unprotected and dissuade the corporation from cooperating with the DOJ.[4] In short, *no* internal investigation is safe under the District Court's test because all, no matter how closely connected to a legal proceeding they are, can be described as "primarily business . . . related." Op. 19.

---

[2] At last count, 67.6% of all Fortune 500 companies are incorporated there. Del. Division of Corporations, *2023 Annual Report Statistics,* https://corp.delaware.gov/stats/.

[3] Plaintiffs' Opp. to Certification under § 1292(b), ECF No. 664 at 4.

[4] *See* Andrew Weissmann & David Newman, *Rethinking Criminal Corporate Liability*, 82 Ind. L.J. 411, 426 (2007) ("A criminal indictment can have devastating consequences for a corporation and risks the *market* imposing what is in effect a corporate death penalty.") (emphasis added).

That is self-evidently wrong. For these reasons, the law regarding the privilege sensibly does not rely on the motivations of clients when seeking or using the legal advice they receive.

## B. The District Court's Undefined Conception Of "Legal" Motivation Undermines The Privilege

The fundamental error made in centering the attorney-client privilege inquiry around the animating purposes of an investigation, rather than the nature of the advice sought by the communication, is demonstrated by the District Court's unsuccessful attempt to say what it means for an internal investigation to have a "legal purpose." The District Court never defined what a "legal purpose" is; and, because no other decisions adopt this standard, there are no guideposts for what it means for attorney-client privilege. The only clue the District Court provided is its view that a "legal purpose" does not include "business or human resources-related" purposes. Op. 19. The Special Master, whose decision the District Court upheld, likewise focused only on whether such investigations were motivated by pending litigation, conflating work-product protection and attorney-client privilege. ECF No. 571 at 15.[5]

---

[5] A court of appeals can review the opinion of the special master, and his application of legal principles *de novo*, when the special master's decision has been upheld by the district court. *See Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287, 1292 (8th Cir. 1997).

By contrast, this Circuit and others have repeatedly defined the concept of "legal advice" in connection with specific communications. *See, e.g., Alomari*, 626 F. App'x at 570; *Cnty. of Erie*, 473 F.3d at 419-20. And the privilege protects "legal advice *of any kind*." *Reed*, 134 F.3d at 355 (emphasis added). The District Court agreed, moreover, that "legal advice is necessarily given . . . during internal investigations." Op. 19. And legal advice related to concerns about business or human resources—no less than legal advice related to litigation—is fully protected.

For example, no one would seriously contest that communications with intellectual-property counsel about whether a company's invention is patentable would be privileged, even though business purposes are the original spark for such an inquiry and no litigation about the invention is anticipated or pending. Nor would anyone contest that the privilege protects legal advice about how to structure a company's potential financial transaction even though, again, business purposes trigger the request and no litigation is on the horizon. Indeed, most of modern law-firm practice is focused on providing legal perspective on business solutions that do not involve litigation.

But, even if the District Court's test did not require the anticipation of litigation, its vague rule that investigations require a "legal purpose" will not do. "[I]f the purpose of the attorney-client privilege is to be served, the attorney and client must be able to predict with some degree of certainty whether particular

discussions will be protected." *Upjohn*, 449 U.S. at 393. As this Court has stressed, "[a]n uncertain privilege—or one which purports to be certain, but rests in widely varying applications by the courts—is little better than no privilege." *In re Lott*, 424 F.3d 446, 450 (6th Cir. 2005) (quoting *Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994)). The undefined conception of a "legal purpose" is "little better" than nothing at all.[6] This Court's intervention is required to correct such an error.

* * *

In short, the District Court simply got the standard wrong. And, in an area where lawyers and clients need predictability and consistency, its contradiction of this Court's case law cannot stand. This Court should immediately correct this clear error.

## II. THE DISTRICT COURT INCORRECTLY CONCLUDED THAT DUAL-PURPOSE DOCUMENTS ARE NOT PROTECTED WORK-PRODUCT

The Special Master and District Court also erred in their analysis of whether the documents generated within the internal investigation are entitled to work-product protection. The District Court correctly recognized that, "[u]nder Sixth

---

[6] Especially where, as here, it was undisputed that the internal investigation was occurring at the same time as several litigations and by outside counsel. When such investigations are conducted by outside counsel, courts often *presume* that the corporation intends to receive legal advice. *See* Paul R. Rice, 1 Attorney-Client Privilege in the United States § 7:18 (2023).

Circuit precedent, the Special Master was tasked with determining if the materials sought were made because of litigation." Op. 22 (cleaned up). But the District Court then incorrectly concluded that a litigant must show that work-product was not created "because of employment decisions and business concerns." Op. 22.

That is not the law. In this Circuit (and elsewhere), "a document can be created for *both* use in the ordinary course of business *and* in anticipation of litigation without losing its work-product privilege." *United States v. Roxworthy*, 457 F.3d 590, 599 (6th Cir. 2006) (emphasis added); *see also United States v. Adlman*, 134 F.3d 1194, 1198-99 (2d Cir. 1998) ("Nothing in [Rule 26(b)(3)] states or suggests that documents prepared 'in anticipation of litigation' with the purpose of assisting in the making of a business decision do not fall within its scope."). That legal principle squarely applies to this case. Plaintiffs admitted that "[o]bviously no internal investigations would have taken place but for the Department of Justice investigation." Reply in Further Support of Plaintiffs' Mot. to Compel Discovery, ECF No. 529 at 4. The internal investigation thus indisputably occurred in anticipation of potential DOJ litigation. The fact that FirstEnergy may have used findings from the investigation for other purposes is irrelevant to the work-product analysis, and the District Court's contrary holding is legal error.

What is more, the District Court's unprecedented standard would create perverse incentives for the conscientious corporation and its counsel. If wrongdoing

by a corporate executive or corporation is discovered in an investigation, the company should be willing (and even encouraged) to act decisively, and counsel should reasonably advise the company on its legal avenues for such action. But corporations may now fear that such action would lead to their attorneys' briefcases being pried open for all the world to see as it could be evidence that such work product was created "because of employment decisions," not litigation concerns. *See* Op. 22. The safest course, therefore, would be to instruct counsel to focus *solely* on litigation—and for corporations not even to consider using the information uncovered in other contexts. That clearly undermines the very purposes supporting the protection's application in the first place, which is why work product is protected even if there is a dual purpose. The District Court's creation of a false dichotomy of business and legal purposes for work product was clear error.

## III. MANDAMUS IS AN APPROPRIATE REMEDY IN THIS CASE

This Court should issue a writ of mandamus directing the District Court to withdraw its order. The Supreme Court has recognized that interlocutory review is appropriate where "a privilege ruling . . . is of special consequence." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110-11 (2009). And, as this Court has recognized "numerous courts of appeals . . . regularly utilize mandamus when

important interests such as privilege are at issue." *Lott*, 424 F.3d at 450;[7] *see also In re Itron*, *Inc.*, 883 F.3d 553, 567-68 (5th Cir. 2018) (collecting cases using mandamus to address erroneous privilege rulings). Mandamus is particularly useful where "immediate resolution [of the contested issue] will avoid the development of discovery practices or doctrine undermining the privilege." *Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159, 163 (2d Cir. 1992).

As explained above, the District Court's and Special Master's legal errors, if allowed to persist, would have severe consequences for corporations and their counsel. The District Court's application of the wrong legal standards in an intensely public case creates substantial uncertainty and will prevent lawyers from being able to provide frank legal advice to their corporate clients. Although "there are limits to the impact of a single district court ruling . . . . prudent counsel monitor court decisions closely and adapt their practices in response." *Kellogg*, 756 F.3d at 762-63. The decisions below thus call out for this Court's immediate correction.

## CONCLUSION

For the reasons stated above, this Court should issue a writ of mandamus directing the District Court to withdraw its order compelling FirstEnergy's production of certain documents.

---

[7] *In re Lott* clarified that this reasoning also applies to the work-product doctrine. 424 F.3d at 448 n.1.

Dated August 5, 2024:

/s/ Brendan F. Quigley
Brendan F. Quigley
BAKER BOTTS LLP
30 Rockefeller Plaza
New York, NY 10112
Telephone: 212.408.2520
Facsimile: 212.259.2520
brendan.quigley@bakerbotts.com

/s/ Roy T. Englert, Jr.
Roy T. Englert, Jr.
Matthew M. Madden
Mark H. Russell
KRAMER LEVIN NAFTALIS &
FRANKEL LLP
2000 K Street NW, 4th Floor
Washington, DC 20006
Telephone: 202.471.3043
Facsimile: 202.775.4510
renglert@kramerlevin.com

/s/ Joel D. Bertocchi
Joel D. Bertocchi
AKERMAN LLP
71 South Wacker Drive
Chicago, IL 60606
Telephone: 312.870.8026
joel.bertocchi@akerman.com

/s/ William Devaney
William Devaney
BAKER & McKENZIE LLP
452 Fifth Avenue
New York, NY 10018
Telephone: 212.626.4337
william.devaney@bakermckenzie.com

Peter P. Tomczak
BAKER & McKENZIE LLP
300 East Randolph Street, Suite 5000
Chicago, IL 60601
Telephone: 312.861.8030
peter.tomczak@bakermckenzie.com

Marnin J. Michaels
BAKER McKENZIE SWITZERLAND AG
Holbeinstrasse 30
Zurich 8034
Switzerland
Telephone: 41 44 384 12 08
marnin.michaels@bakermckenzie.com

/s/ John S. Hicks
John S. Hicks, Shareholder and
General Counsel
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ PC
1600 West End Avenue, Suite 2000
Nashville, TN 37203
Telephone: 615.726.5600
jhicks@bakerdonelson.com


/s/ Laura R. Giokas
Laura R. Giokas
Ameer Gado
BRYAN CAVE LEIGHTON PAISNER LLP
211 North Broadway, Suite 3600
St. Louis, MO 63102
Telephone: 314.259.2153
laura.giokas@bclplaw.com
Telephone: 314.259.2745
ameer.gado@bclplaw.com


/s/ Anirudh Bansal
Anirudh Bansal
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, NY 10005
Telephone: 212.701.3207
abansal@cahill.com


/s/ William S. Snyder
William S. Snyder
BRADLEY ARANT BOULT CUMMINGS
LLP
1445 Ross Avenue, Suite 3600
Dallas, TX 75202
Telephone: 214.257.9814
wsnyder@bradley.com


/s/ Mary Elizabeth Taylor
Mary Elizabeth Taylor
General Counsel
CADWALADER, WICKERSHAM & TAFT
LLP
200 Liberty Street
New York, NY 10281
Telephone: 212.504.6960
beth.taylor@cwt.com


/s/ Celeste L.M. Koeleveld
Celeste L.M. Koeleveld
Rijie Ernie Gao
CLIFFORD CHANCE US LLP
Two Manhattan West
375 9th Avenue,
New York, NY 10001
Telephone: 212.878.8000
celeste.koeleveld@cliffordchance.com
ernie.gao@cliffordchance.com

*/s/ Andrew D. Goldstein*
Andrew D. Goldstein
COOLEY LLP
1299 Pennsylvania Avenue, NW Suite 700
Washington, DC 20004
Telephone: 202.842.7805
agoldstein@cooley.com

*/s/ Elisha A. King*
Elisha A. King
General Counsel
DLA PIPER LLP (US)
500 Eighth Street, NW
Washington, DC 20004
Telephone: 202.799.4254
elisha.king@dlapiper.com

*/s/ Anthony D. Mirenda*
Anthony D. Mirenda
FOLEY HOAG LLP
155 Seaport Boulevard, Suite 1600
Boston, MA 02210
Telephone: 617.832.1220
adm@foleyhoag.com

*/s/ Thomas G. Wilkinson, Jr.*
Thomas G. Wilkinson, Jr.
Stephen A. Miller
COZEN O'CONNOR
One Liberty Place
1650 Market Street Suite 2800
Philadelphia, PA 19103
Telephone: 212.665.2000
twilkinson@cozen.com
samiller@cozen.com

*/s/ James R. Clark*
James R. Clark
Partner and General Counsel
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202
Telephone: 414.271.2400
jclark@foley.com

*/s/ Mary Eaton*
Mary Eaton
Meredith Kotler
FRESHFIELDS BRUCKHAUS DERINGER US LLP
175 Greenwich Street, 51st Floor
New York, NY 10007
Telephone: 212.277.4007
mary.eaton@freshfields.com
meredith.kotler@freshfields.com

*/s/ Martin I. Kaminsky*
Martin I. Kaminsky
Chief Legal Officer
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, NY 10017
Telephone: 212.801.6892
kaminskym@gtlaw.com

*/s/ Sean Hecker*
Sean Hecker
John C. Quinn
Kate L. Doniger
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Telephone: 212.763.0883
shecker@heckerfink.com
jquinn@heckerfink.com
kdoniger@heckerfink.com

*/s/ Jeffrey B. Maletta*
Jeffrey B. Maletta
General Counsel
K&L GATES LLP
1601 K Street, NW
Washington, DC 20006
Telephone: 202.778.9000
jeffrey.maletta@klgates.com

*/s/ Stacy L. Brainin*
Stacy L. Brainin
General Counsel
HAYNES AND BOONE, LLP
2801 N. Harwood Street, Suite 2300
Dallas, TX 75201
Telephone: 214.651.5584
stacy.brainin@haynesboone.com

*/s/ Michael E. Salzman*
Michael E. Salzman
HUGHES HUBBARD & REED LLP
One Battery Park Plaza, Floor 15
New York, NY 10004
Telephone: 212.837.6833
michael.salzman@hugheshubbard.com

*/s/ Michael I. Verde*
Michael I. Verde
KATTEN MUCHIN ROSENMAN LLP
50 Rockefeller Plaza
New York, NY 10020
Telephone: 212.940.8541
michael.verde@katten.com

*/s/ Susan M. Spaeth*
Susan M. Spaeth
Partner and Chief Legal Officer
KILPATRICK TOWNSEND & STOCKTON
LLP
1302 El Camino Real, Suite 175
Menlo Park, CA 94025
Telephone: 650.324.6335
sspaeth@ktslaw.com

*/s/ Mark E. Schneider, P.C.*
Mark E. Schneider, P.C.
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: 312.862.2253
mark.schneider@kirkland.com

*/s/ Mary Lou Soller*
Mary Lou Soller
Member and Firm Counsel
MILLER & CHEVALIER CHARTERED
900 16th Street NW
Black Lives Matter Plaza
Washington, DC 20006
Telephone: 202.626.5800
msoller@milchev.com

*/s/ John P. Brumbaugh*
John P. Brumbaugh
Partner and Co-General Counsel
KING & SPALDING LLP
1180 Peachtree Street NE, Suite 1600
Atlanta, GA 30309
Telephone: 404.572.4617
pbrumbaugh@kslaw.com

*/s/ Jennifer A. Kenedy*
Jennifer A. Kenedy
LOCKE LORD LLP
111 S. Wacker Drive, Suite 4100
Chicago, IL 60606
Telephone: 312.443.0377
jkenedy@lockelord.com

*/s/ Daniel S. Sanders, Jr.*
Daniel S. Sanders, Jr.
Partner and General Counsel
NELSON MULLINS RILEY &
SCARBOROUGH LLP
Atlantic Station
201 17th Street NW, Suite 1700
Atlanta, GA 30363
Telephone: 404.322.6000
dan.sanders@nelsonmullins.com

/s/ William Connolly
William Connolly, General Counsel
Robert Fisher
NIXON PEABODY LLP
Exchange Place, 53 State Street
Boston, MA 02109
Telephone: 617.345.1171
wconnolly@nixonpeabody.com
Telephone: 617.345.1335
rfisher@nixonpeabody.com

/s/ Kevin J. Harnisch
Kevin J. Harnisch
NORTON ROSE FULBRIGHT US LLP
799 9th Street NW, Suite 1000
Washington, DC 20001
Telephone: 202.662.4520
kevin.harnisch@nortonrosefulbright.com

Sandeep Savla
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019
Telephone: 212.318.3159
sandeep.savla@nortonrosefulbright.com

/s/ Martin S. Checov
Martin S. Checov
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone: 415.984.8713
mchecov@omm.com

/s/ Ronald L. Francis, Jr.
Ronald L. Francis, Jr.
REED SMITH LLP
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
Telephone: 412.288.7234
rfrancis@reedsmith.com

Jillian Weinstein
O'MELVENY & MYERS LLP
400 South Hope Street, Suite 1900
Los Angeles, CA 90071
Telephone: 213.430.8198
jweinstein@omm.com

Peter J. Kennedy
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071
Telephone: 213.457.8062
pkennedy@reedsmith.com

/s/ Peter C. Erichsen
Peter C. Erichsen
ROPES & GRAY LLP
800 Boylston Street
Boston, MA 02199
Telephone: 617.951.7098
peter.erichsen@ropesgray.com

/s/ Harry S. Davis
Harry S. Davis
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, NY 10022
Telephone: 212.756.2222
harry.davis@srz.com

*/s/ Lori L. Roeser*

Lori L. Roeser
SEYFARTH SHAW LLP
233 S. Wacker Drive, Suite 8000
Chicago, IL 60606
Telephone: 312.460.5258
lroeser@seyfarth.com

*/s/ Robert F. Carangelo*

Robert F. Carangelo
Jessie B. Mishkin
WEIL, GOTSHAL & MANGES LLP
767 Fifth Ave
New York, NY 10153
Telephone: 212.310.8000
robert.carangelo@weil.com
jessie.mishkin@weil.com

*/s/ Jaime L. Theriot*

Jaime L. Theriot
TROUTMAN PEPPER HAMILTON
SANDERS LLP
600 Peachtree Street, N.E., Suite 3000
Atlanta, GA 30308
Telephone: 404.885.3534
jaime.theriot@troutman.com

*/s/ Jennifer Paradise*

Jennifer Paradise
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: 212.819.8200
jparadise@whitecase.com

*/s/ Tariq Mundiya*

Tariq Mundiya
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
Telephone: 212.728.8565
tmundiya@willkie.com

*Counsel for Amici Curiae*

# APPENDIX: LIST OF *AMICI CURIAE*

1. Kramer Levin Naftalis & Frankel LLP
2. Baker Botts L.L.P.
3. Akerman LLP
4. Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
5. Baker & McKenzie LLP
6. Bradley Arant Boult Cummings LLP
7. Bryan Cave Leighton Paisner LLP
8. Cadwalader, Wickersham & Taft LLP
9. Cahill Gordon & Reindel LLP
10. Clifford Chance US LLP
11. Cooley LLP
12. Cozen O'Connor
13. DLA Piper LLP (US)
14. Foley & Lardner LLP
15. Foley Hoag LLP
16. Freshfields Bruckhaus Deringer US LLP
17. Greenberg Traurig LLP
18. Haynes and Boone, LLP
19. Hecker Fink LLP
20. Hughes Hubbard & Reed LLP
21. K&L Gates LLP
22. Katten Muchin Rosenman LLP
23. Kilpatrick Townsend & Stockton LLP
24. King & Spalding LLP
25. Kirkland & Ellis LLP
26. Locke Lord LLP
27. Miller & Chevalier Chartered
28. Nelson Mullins Riley & Scarborough LLP
29. Nixon Peabody LLP
30. Norton Rose Fulbright US LLP
31. O'Melveny & Myers LLP
32. Reed Smith LLP
33. Ropes & Gray LLP
34. Schulte Roth & Zabel LLP
35. Seyfarth Shaw LLP
36. Troutman Pepper Hamilton Sanders LLP
37. Weil, Gotshal & Manges LLP
38. White & Case LLP

39.    Willkie Farr & Gallagher LLP

## CERTIFICATE OF COMPLIANCE

In accordance with Fed. R. App. P. 32(g) and 6th Circuit Rule 32, I certify that this brief complies with the type-volume limit of Fed. R. App. P. 29(a)(5) because this brief contains 3380 words, excluding the parts of the motion exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016, Times New Roman, 14-point font.

/s/ Roy T. Englert, Jr.
Roy T. Englert, Jr.

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system on August 5, 2024. All participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

/s/ Roy T. Englert, Jr.
Roy T. Englert, Jr.