No. 24-3654

# In the United States Court of Appeals for the Sixth Circuit

_____

IN RE FIRSTENERGY CORP.,
*Petitioner.*

_____

On Petition for Writ of Mandamus from the
United States District Court for the Southern District of Ohio
Nos. 2:20-cv-03785, 2:20-cv-04287
Hon. Chief Judge Algenon L. Marbley

## BRIEF FOR LAWYERS FOR CIVIL JUSTICE AS *AMICUS CURIAE* IN SUPPORT OF PETITIONER

Jonathan M. Redgrave
REDGRAVE LLP
4800 Westfields Blvd
Suite 250
Chantilly, VA 20151
(571) 393-5276
JRedgrave@redgravellp.com
*Counsel for Amicus Curiae*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: 24-3654          Case Name: In re FirstEnergy Corp.,

Name of counsel:  Jonathan M. Redgrave

Pursuant to 6th Cir. R. 26.1, Lawyers for Civil Justice
                             *Name of Party*

makes the following disclosure:

1.     Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the
       identity of the parent corporation or affiliate and the relationship between it and the named
       party:

> Pursuant to Federal Rule of Appellate Procedure 26.1, Amicus Curiae Lawyers for Civil Justice
> states that it has no corporate parent, and that no publicly held corporation owns any interest in
> Lawyers for Civil Justice.

2.     Is there a publicly owned corporation, not a party to the appeal, that has a financial interest
       in the outcome?  If yes, list the identity of such corporation and the nature of the financial
       interest:

---

CERTIFICATE OF SERVICE

I certify that on _____ August 5, 2024 _____ the foregoing document was served on all
parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not,
by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Jonathan M. Redgrave
Redgrave LLP
Attorney for Lawyers for Civil Justice

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................ii

IDENTITY AND INTEREST OF AMICUS CURIAE........................... 1

CERTIFICATE OF AUTHORSHIP AND SUPPORT ........................... 4

SUMMARY OF THE ARGUMENT ......................................................... 5

ARGUMENT....................................................................................... 7

    A. The Primary Purpose Test Undermines The Goals Of The Federal Rules And The Attorney-Client Privilege. ...................................... 7

        1. The Primary Purpose Test Is Not Practicable in Circumstances Where Anticipated Litigation Motivates An Internal Investigation. ................................................................... 7

        2. The Primary Purpose Test As Applied Here Is Inconsistent With The Goals Of The Attorney-Client Privilege. ............................ 11

    B. The D.C. Circuit's Test Reflects The Goals Of The Federal Rules And The Attorney-Client Privilege.................................................. 15

        1. The D.C. Circuit Test Reflects The Goals Of The Federal Rules And Is Both Practical And Predictable. ...................................... 16

        2. The D.C. Circuit Test Reflects The Goals Of The Attorney-Client Privilege. ................................................................................... 18

CONCLUSION ...................................................................................... 19

CERTIFICATE OF COMPLIANCE ....................................................... 20

CERTIFICATE OF SERVICE................................................................ 20

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Alomari v. Ohio Dep't of Pub. Safety,*
626 F. App'x 558 (6th Cir. 2015) ........................................................ 8

*Att'y Gen. v. Facebook, Inc.,*
487 Mass. 109 (2021) ............................................................................ 2

*Carhartt, Inc. v. Innovative Textiles, Inc.,*
333 F.R.D. 113 (E.D. Mich. 2019) ...................................................... 6

*Chore-Time Equip., Inc. v. Big Dutchman, Inc.,*
255 F. Supp. 1020 (W.D. Mich. 1966) ............................................... 13

*Cooey v. Strickland,*
269 F.R.D. 643 (S.D. Ohio 2010) ........................................................ 5

*Edwards v. Scripps Media,*
No. 18-10735, 2019 WL 2448654 (E.D. Mich. Jun. 10, 2019) ............. 6

*Fed. Trade Comm'n v. Boehringer Ingelheim Pharms., Inc.,*
892 F.3d 1264 (D.C. Cir. 2018) ................................................ 8, 17, 19

*Ganley v. Mazda N. Am. Operations,*
No.1:04-cv-2000, 2007 WL 9706988 (N.D. Ohio Nov. 15, 2007) .......... 6

*In re FirstEnergy Corp. Sec. Litig.,*
No. 2:20-CV-03785-ALM-KAJ, 2024 WL 1984802 (S.D. Ohio May 6,
2024) ................................................................................................. 5, 10

*In re FirstEnergy Corp. Sec. Litig.,*
No. 2:20-CV-3785, 2023 WL 8290917 (S.D. Ohio Nov. 29, 2023) ...... 10

*In re General Motors LLC Ignition Switch Litigation,*
80 F. Supp. 3d 521 (S.D.N.Y. 2015) .................................................... 9

*In re Grand Jury,*
23 F.4th 1088 (9th Cir. 2021) ............................................................ 17

*In re Grand Jury,*
143 S. Ct. 543 (2023) ...................................................................... 2, 17

*In re Jury,*
143 S. Ct. 80 (2022) ........................................................................... 17

*In re Kellogg Brown & Root, Inc.*,
    756 F.3d 754 (D.C. Cir. 2014) ..................................................... *passim*

*Lee v. EUSA Pharma. US LLC*,
    No. 2:22-CV-11145, 2024 WL 250064 (E.D. Mich. Jan. 23, 2024) ....... 6

*Pitkin v. Corizon Health, Inc.*,
    No. 16-cv-02235, 2017 WL 6496565 (D. Or. Dec. 18, 2017) .............. 17

*Smith v. FirstEnergy Corp.*,
    No. 2:20-CV-3755, 2022 WL 22691867 (S.D. Ohio Dec. 5, 2022) ....... 10

*Trammel v. United States*,
    445 U.S. 40 (1980) ................................................................... 18

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981) ......................................................... 6, 12, 13, 14

*Wikel v. Wal-Mart Stores, Inc.*,
    197 F.R.D. 493 (N.D. Okla. 2000) ............................................... 8

## RULES

Fed. R. App. P. 21(d)(1) ............................................................ 20

Fed. R. App. P. 29(a)(5) ............................................................ 20

Fed. R. App. P. 32(a) ............................................................... 20

Fed. R. Civ. P. 1 ...................................................................... 7

Fed. R. Civ. P. 26(b)(1) .......................................................... 7, 12

Fed. R. Evid. 502 ..................................................................... 2

## OTHER AUTHORITIES

Model Rules of Pro. Conduct r. 1.4(b) (Am. Bar Ass'n 2019) .................. 15

## IDENTITY AND INTEREST OF *AMICUS CURIAE*

Lawyers for Civil Justice ("LCJ") is a national coalition of defense trial lawyer organizations, law firms, and corporations that promotes excellence and fairness in the civil justice system to secure the just, speedy, and inexpensive determination of civil cases. Since 1987, LCJ has been proposing and advocating for procedural reforms that (1) promote balance in the civil justice system, (2) reduce the costs and burdens associated with litigation, and (3) make the resolution of civil disputes more consistent and efficient. LCJ, and its members, have deep knowledge of and interest in the substance and correct interpretation and application of the Federal Rules of Civil Procedure and Federal Rules of Evidence.

LCJ is focused on promoting a sensible and balanced approach to discovery that ensures access to needed information, while maintaining uniform and predictable application of recognized protections and privileges. LCJ submits written comments related to the Civil Rules Advisory Committee's work to develop potential amendments to the Rules—including on privilege-related issues—and acts as *amicus curiae* in cases involving the interpretation and application of the Rules to

promote fairness, clarity, and certainty for all civil cases.  LCJ submitted

extensive public comments to the Advisory Committee on Evidence Rules

of the Judicial Conference of the United States in 2007 on the then-

proposed Fed. R. Evid. 502,[1] and in 2020 submitted suggested

amendments to the Federal Rules of Civil Procedure governing privilege

logging.[2]  LCJ has participated in proceedings to protect the attorney-

client privilege[3] and the applicability of work product protections to an

internal investigation.[4]  LCJ's members are deeply familiar with the key

changes in technology over the last 20 years that have drastically

---

[1] *See* Lawyers for Civil Justice, Comments to the Advisory Committee on Evidence Rules of the Judicial Conference of the U.S. on Proposed Revisions to Rule 502, Public Comment 06–EV–050 (Jan. 5, 2007), https://www.uscourts.gov/sites/default/files/fr_import/06-EV-050.pdf.

[2] *See Privilege and Burden: the need to amend Rules 26(b)(5)(A) and 45(e)(2) to replace "document-by-document" privilege logs with more effective and proportional alternatives*, Lawyers for Civil Justice, Suggestion for Rulemaking to the Advisory Committee on Civil Rules (Aug. 4, 2020), https://www.uscourts.gov/sites/default/files/20-cv-r_suggestion_from_lawyers_for_civil_justice_-_rules_26_and_45_privilege_logs _0.pdf.

[3] Brief of Amicus Curiae Lawyers for Civil Justice, *In re Grand Jury*, No. 21-1397 (Nov. 23, 2022).  *See In re Grand Jury*, 143 S. Ct. 543 (2023) (dismissing the writ of certiorari as improvidently granted).

[4] Brief of Amicus Curiae Lawyers for Civil Justice, *Att'y Gen. v. Facebook, Inc.*, No. SJC-12946 (Mass. Nov. 13, 2020).  *See Att'y Gen. v. Facebook, Inc.*, 487 Mass. 109, 110 (2021).

increased the volume and altered the nature of communications in business organizations, including how in-house and outside counsel interact with business clients to provide legal advice.

LCJ's members both propound and respond to discovery requests and third-party subpoenas. They assert the attorney-client privilege and the work product doctrine when warranted and challenge such assertions when not. Accordingly, LCJ's interest here is to ensure that when courts evaluate the privilege status of dual-purpose communications in the context of internal corporate investigations, they apply tests that are predictable, consistent, and practical, and that work fairly for both requesting and producing parties in the context of the information age.

Because LCJ is an organization comprised of both corporations and their outside lawyers, LCJ also has an interest in ensuring that the rules applicable to privilege (1) are practicable given the way modern corporations communicate with their counsel; and (2) facilitate the attorney-client relationship by ensuring that legal advice and requests for legal advice are protected, such that open and frank discussion between lawyers and clients is not chilled.

## CERTIFICATE OF AUTHORSHIP AND SUPPORT

*Amicus Curiae* Lawyers for Civil Justice states that no counsel for either party authored this brief in whole or in part. Only Lawyers for Civil Justice's undersigned attorney and law firm prepared its content. No party or party's counsel contributed any money to Lawyers for Civil Justice for preparing or submitting this brief, and no person or entity other than Lawyers for Civil Justice, its members and its counsel contributed money to fund the preparation and submission of this brief.

## SUMMARY OF THE ARGUMENT

The district court erred in issuing a sweeping order that denied application of the attorney-client privilege to *any* attorney-client communications or documents related to two internal investigations conducted by outside counsel for the Petitioner. In doing so, the district court applied an exceedingly narrow test for privilege, requiring that a party invoking the attorney-client privilege in this context must show that ***the*** primary purpose of the communication was to render or obtain legal advice (hereafter, "the primary purpose test").[5] Instead, the district court should have adopted the approach to dual purpose communications articulated by the D.C. Circuit, under which the attorney-client privilege may apply when ***a*** significant purpose of the communication was to seek or provide legal advice (hereafter, "the D.C. Circuit test"). *See In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 760 (D.C. Cir. 2014) (Kavanaugh, J.).

District courts in the Sixth Circuit have not consistently applied

---

[5] *See In re FirstEnergy Corp. Sec. Litig.*, No. 2:20-CV-03785-ALM-KAJ, 2024 WL 1984802, at *10 (S.D. Ohio May 6, 2024) (requiring Petitioner to establish that "the predominant purpose of the communication is to render or solicit legal advice.") (quoting *Cooey v. Strickland*, 269 F.R.D. 643, 650 (S.D. Ohio 2010)) (emphasis added).

one test or the other to dual-purpose communications.[6]   This Court

should resolve this inconsistency by adopting the D.C. Circuit test and

holding that communications and documents created in the context of an

internal investigation conducted by counsel may be privileged where, as

here, the investigation was motivated in significant part by a legal

purpose.  If instead the primary purpose test is applied and the district

court's reasoning is allowed to stand, the application of the attorney-

client privilege in the internal investigation context will be unpredictable

and unreliable—and accordingly, the public benefits of the privilege

weakened.  *See Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981)

---

[6] Unlike the district court here, the court in *Lee v. EUSA Pharma. US LLC*, No. 2:22-CV-11145, 2024 WL 250064, at *4 (E.D. Mich. Jan. 23, 2024), applied a test akin to the D.C. Circuit test to communications supporting an internal investigation. *See also Edwards v. Scripps Media*, No. 18-10735, 2019 WL 2448654, at *1-2 (E.D. Mich. Jun. 10, 2019) (citing *Kellogg* and holding that "[i]n the context of an organization's internal investigation, if one of the significant purposes of the internal investigation was to obtain or provide legal advice, the privilege will apply").   Other courts have found that where it is not possible to determine whether legal or business purposes are the primary motivating factor, respect for the privilege must prevail.  *See, e.g.*, *Carhartt, Inc. v. Innovative Textiles, Inc.*, 333 F.R.D. 113, 117 (E.D. Mich. 2019) ("[A]s legal and business issues are often 'inextricably intertwined,' in determining whether advice is predominately legal or business in nature, courts should resolve doubts in favor of the privilege." (quoting *Ganley v. Mazda N. Am. Operations*, No. 1:04-cv-2000, 2007 WL 9706988, at *5 (N.D. Ohio Nov. 15, 2007)))

("An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all.").

## ARGUMENT

### A. The Primary Purpose Test Undermines The Goals Of The Federal Rules And The Attorney-Client Privilege.

A central purpose of the Federal Rules is to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. In addition, the Rules expressly protect privileged information from discovery. *See* Fed. R. Civ. P. 26(b)(1) (providing that the scope of discovery extends to "any ***nonprivileged*** matter that is relevant to any party's claim or defense and proportional to the needs of the case") (emphasis added). The primary purpose test that the district court applied conflicts with both these purposes of the Federal Rules, as it is unworkable in practice and undermines the attorney-client privilege.

### 1. The Primary Purpose Test Is Not Practicable in Circumstances Where Anticipated Litigation Motivates An Internal Investigation.

When an incident occurs involving possible serious misconduct, responsible companies conduct an internal investigation. One purpose of the investigation is usually to identify the cause and prevent future

incidents. An equally important—and inextricably intertwined—purpose is to determine and mitigate potential legal consequences, which can include civil litigation and governmental investigations.

When a company hires outside counsel to perform an internal investigation, it generally does so to obtain the lawyers' legal advice. *See*, *e.g.*, *Wikel v. Wal-Mart Stores, Inc.*, 197 F.R.D. 493, 495 (N.D. Okla. 2000) (noting that while not dispositive of the question of privilege or work product protection, "involvement of an attorney is a highly relevant factor"). Legal advice informs business decisions, just as business information and goals inform legal advice; legal decisions are also often business decisions. *Fed. Trade Comm'n v. Boehringer Ingelheim Pharms., Inc.*, 892 F.3d 1264, 1268 (D.C. Cir. 2018) ("The decision whether and at what price to settle ultimately was a business decision as well as a legal decision."); *see Alomari v. Ohio Dep't of Pub. Safety*, 626 F. App'x 558, 571 (6th Cir. 2015) ("Advising a client on how to respond to media inquiries has important legal implications . . . ." (citation omitted)). Consequently, "an attorney-client privilege that fails to account for the multiple and often-overlapping purposes of internal investigations would threaten[] to limit the valuable efforts of corporate counsel to ensure their

client's compliance with the law." *In re General Motors LLC Ignition Switch Litigation*, 80 F. Supp. 3d 521 (S.D.N.Y. 2015).

Then-Circuit Judge Kavanaugh summarized the problem with attempting to divine the "primary purpose" for an internal investigation communication in *In re Kellogg Brown & Root, Inc.*:

> Trying to find the one primary purpose for a communication motivated by two sometimes overlapping purposes (one legal and one business, for example) can be an inherently impossible task. It is often not useful or even feasible to try to determine whether the purpose was A or B when the purpose was A and B. It is thus not correct for a court to presume that a communication can have only one primary purpose[.] It is likewise not correct for a court to try to find the one primary purpose in cases where a given communication plainly has multiple purposes.

756 F.3d at 759–60. Moreover, even were it possible to determine the primary purpose of an internal investigation at a given point, that purpose might well shift over time—by its nature, an internal investigation will discover previously unknown facts and as it proceeds, such new information may change the relative weight or significance of business and legal considerations. Finally, the inherent subjectivity in determining which purpose is "primary" among multiple overlapping considerations leads to problems of proof and, inevitably, to wasteful

side-show disputes that distract the parties and the court from resolving matters on their merits.

This case exemplifies the difficulties in assigning a single primary purpose to an investigation. While the district court found that the investigations served business purposes related to "SEC public requirements" and "human resources/public relations purposes," *In re FirstEnergy Corp. Sec. Litig.*, 2024 WL 1984802, at *10 (citation omitted), Petitioner in fact faced continuing legal issues, supporting its representations that the investigations were conducted for legal purposes. *E.g.*, *Smith v. FirstEnergy Corp.*, No. 2:20-CV-3755, 2022 WL 22691867, at *1 n.2 (S.D. Ohio Dec. 5, 2022) ("First Energy has entered into a deferred prosecution agreement, made public, in which it admits to a bribery scheme by former executives of the company."). Despite the special master acknowledging that the business purposes of the investigations "would likely inform litigation preparation," *In re FirstEnergy Corp. Sec. Litig.*, No. 2:20-CV-3785, 2023 WL 8290917, at *8 (S.D. Ohio Nov. 29, 2023), the district court ruled that all documents and communications associated with the investigation were non-privileged

because Petitioner failed to establish that seeking legal advice was *the* primary purpose of the investigations.

In doing so, the district court ignored the context of the legal circumstances and issues that FirstEnergy and its independent directors faced when they retained outside counsel to conduct the investigations. The very "business" considerations the court found "predominant" were necessarily motivated by a need to mitigate legal consequences and prevent future misconduct that would require legal counsel and advice. Stated differently, the district court was blind to the uncontested fact that legal risks spurred the investigations by outside attorney and underpinned the cited business objectives.

## 2. The Primary Purpose Test As Applied Here Is Inconsistent With The Goals Of The Attorney-Client Privilege.

Even if it were possible (and workable in practice) to reliably determine which purpose of an investigation or specific attorney-client communication was "primary," the primary purpose test frustrates the goals underlying the attorney-client privilege and undermines the attorney-client relationship by threatening to strip legitimate legal advice of privilege protection simply because it is combined with nonlegal

considerations.  Over forty years ago, the Supreme Court articulated the purpose, and foundations of the attorney-client privilege as follows:

> to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.  The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.

*Upjohn Co.,* 449 U.S. at 389.

Permitting the discovery of legal advice and communications made to obtain legal advice simply because they are combined with nonlegal concerns conflicts with the interests underlying the privilege as articulated in *Upjohn Co.*  It also conflicts with the Federal Rules of Civil Procedure by effectively broadening the scope of discovery, which the Rules expressly limit to nonprivileged matters.  *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . .").  The primary purpose test therefore represents, in effect, an improper amendment to the Rules, bypassing the rulemaking roles of the Rules Enabling Act, the Judicial Conference of the United States, and the Supreme Court.

As one court has observed, "[w]here a lawyer possesses multifarious talents, his clients should not be deprived of the attorney-client privilege, where applicable, simply because their correspondence is also concerned with highly technical matters." *Chore-Time Equip., Inc. v. Big Dutchman, Inc.*, 255 F. Supp. 1020, 1023 (W.D. Mich. 1966). In the context of an internal investigation, the primary purpose test threatens to create a perverse incentive for businesses not to act on conclusions derived from attorney-lead investigations, for fear that their communications may later be found insufficiently "legal." Companies will have little choice but to limit the free flow of information in their communications with counsel even where legal advice is sought, in stark contrast to the fundamental purpose of the attorney-client privilege: "to encourage full and frank communication between attorneys and their clients." *Upjohn Co.*, 449 U.S. at 389. The unpredictability of the primary purpose test discourages that open exchange of information between lawyer and client. Employees may be reluctant to be frank and fulsome if their statements might be made public. Companies may forego performing an internal investigation altogether out of fear that in future litigation a court may decide that while seeking legal advice may have

been a purpose of the investigation, it was not the ***primary*** purpose—thus exposing privileged communications to an adversary. In addition, companies may be forced to artificially bifurcate legal and business purpose investigations, risking contrary results and hindering counsel's ability to provide sound legal advice. *See id.* at 392.

The ultimate result is the chilling of open communication between clients and attorneys. If the primary purpose test applies, reasonable lawyers communicating with their clients about any investigation that arguably entails elements of business considerations would need to try to divine mid-communication what purpose could later be seen as primary, and to then advise the client to change how it is communicating (or even to stop communicating entirely) due to the risk that a communication could later be exposed as unprivileged. That assessment is impractical given the pace of business decision-making and the need for timely legal advice to respond to crises in the context of an evolving internal investigation.

Further, the chilling effect of the primary purpose test creates ethical dilemmas for and places new burdens on counsel. The lawyer will need to instruct the client on the narrow scope of communications

protected under the primary purpose test and warn about the potential loss of privilege protection should the client continue to communicate about matters in a way that a court may later find did not have as its primary purpose the provision of legal advice. *See* Model Rules of Pro. Conduct r. 1.4(b) (Am. Bar Ass'n 2019) ("A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."). And given the imprecise subjective nature of the determination, lawyers will find it difficult if not impossible to give any clear boundaries about what is and is not privileged.

At its core, the primary purpose test places form over substance. Under the test, legal advice that would be privileged standing alone loses that protection simply because it includes discussion of related business considerations such that the legal purpose could be considered (by non-participants to the investigation, and often years later) not to be primary.

## B. The D.C. Circuit's Test Reflects The Goals Of The Federal Rules And The Attorney-Client Privilege.

The dual-purpose communication test that better promotes the goals of the Federal Rules and protects the attorney-client privilege is the D.C. Circuit test, which requires litigants and courts to ask whether

obtaining or providing legal advice was "one of the significant purposes of the communication." *Kellogg*, 756 F.3d at 760. If a legal purpose was a significant factor motivating the communication, then the communication is privileged. *Id.*

## 1. The D.C. Circuit Test Reflects The Goals Of The Federal Rules And Is Both Practical And Predictable.

The D.C. Circuit's approach in practice leads to greater predictability and certainty than the primary purpose test and results in fewer costly disputes, thereby promoting the Federal Rules' purposes of uniformity and the speedy and inexpensive resolution of actions. The test requires resolving only a single question: whether obtaining or providing legal advice was a significant purpose of the communication, no matter what other purposes may have existed. Once a significant legal purpose has been identified, courts need not grapple with the relative significance of any nonlegal purpose. *See Kellogg*, 756 F. 3d at 759–60.

This is a more straightforward determination than the primary purpose test, which requires resolving the same initial question of whether a significant legal purpose exists, but then *also* requires identifying every possible legal and nonlegal purpose underlying the

communication and weighing them against each other to determine which is predominant—often an impossible task to do other than in an arbitrary and speculative fashion. *See Pitkin v. Corizon Health, Inc.*, No. 16-cv-02235, 2017 WL 6496565, at *3–4 (D. Or. Dec. 18, 2017) (rejecting the primary purpose test as unworkable "in circumstances where a communication serves many overlapping purposes, and none of them can reasonably be considered 'primary' over any other"). *But see In re Grand Jury*, 23 F.4th 1088, 1094–95 (9th Cir. 2021) (holding that the reasoning of D.C. Circuit test has merit but leaving open whether "a primary purpose test" should apply).[7]

By avoiding the need to engage in an after-the-fact, speculative weighing of legal and nonlegal purposes, the D.C. Circuit test is "clearer, more precise, and more predictable," *Kellogg*, 756 F.3d at 760, and "helps to reduce uncertainty regarding the attorney-client privilege," *Boehringer*, 892 F.3d at 1268. This greater predictability and simplicity of application can be expected to lead to fewer privilege disputes and

---

[7] The Supreme Court granted *certiorari* in *In re Jury*, 143 S. Ct. 80 (2022), and subsequently dismissed *certiorari* as improvidently granted. 143 S. Ct. 543 (2023).

reduced burden and delay.

## 2. The D.C. Circuit Test Reflects The Goals Of The Attorney-Client Privilege.

By ensuring that requests for legal advice will not lose their privilege protection simply because they are intertwined with discussion of nonlegal concerns, the D.C. Circuit test promotes open communication and ensures that the client can obtain the maximum benefit from the attorney-client relationship by permitting the client to safely share with counsel all information potentially relevant to securing legal advice. *See Trammel v. United States*, 445 U.S. 40, 51 (1980) ("The lawyer-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out."). The test provides a clear, consistent standard that allows the parties and the courts to efficiently resolve disputed claims.

Indeed, in its brief to the Supreme Court in *In re Grand Jury*, the United States argued that applying the D.C. Circuit's test in the particular context of internal investigations was appropriate:

> *Kellogg* describes a sensible way of "apply the 'primary purpose' test" in certain contexts, like internal investigations, where a significant legal purpose, like

> assessing past liability and ensuring future compliance, would naturally predominate.

Brief for the United States, at 32, *In re Grand Jury*, No. 21-1397 (Dec. 16, 2022) (citing *Boehringer*, 892 F.3d at 1267 (Kavanaugh, J.); *Boehringer*, 892 F.3d at 1270 (Pillard, J., concurring)). That, as the United States reasoned, is the proper test here.

## CONCLUSION

The Court should resolve the inconsistency among district courts in the Sixth Circuit by adopting the D.C. Circuit test for dual-purpose communications and hold that communications and documents created in the context of an internal investigation conducted by legal counsel may be privileged where, as here, the investigation was motivated in significant part by a legal risks, issues, and purpose.

Dated: August 5, 2024      Respectfully submitted,

/s Jonathan Redgrave
Jonathan M. Redgrave
REDGRAVE LLP
4800 Westfields Blvd
Suite 250
Chantilly, VA 20151
JRedgrave@redgravellp.com
(571) 393-5276

Counsel for *Amicus Curiae* –
Lawyers for Civil Justice

## CERTIFICATE OF COMPLIANCE

This amicus brief complies with Federal Rules of Appellate Procedure 21(d)(1) and 29(a)(5) because it contains 3,645 words.

This amicus brief also complies with Federal Rule of Appellate Procedure 32(a) because it was prepared in 14-point font using a proportionally spaced typeface.

Dated: August 5, 2024   /s Jonathan Redgrave
            Jonathan Redgrave


## CERTIFICATE OF SERVICE

I certify that on this 5th day of August, 2024, the foregoing was filed electronically with the Clerk of Court and served on the parties using the Court's CM/ECF system.

Dated: August 5, 2024   /s Jonathan Redgrave
            Jonathan Redgrave