No. 24-3654

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Aug 7, 2025

KELLY L. STEPHENS, Clerk

In re:  FIRSTENERGY CORPORATION,　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)　　　　　O R D E R
　　　　　　　Petitioner.　　　　　　　　　　　)

Before:  SUTTON, Chief Judge; BATCHELDER and NALBANDIAN, Circuit Judges.

FirstEnergy Corporation undertook two internal investigations following former Ohio House Speaker Larry Householder's indictment, which implicated FirstEnergy in a bribery scheme related to the passage of Ohio House Bill 6.  Shareholders sued FirstEnergy in a securities class action and sought the fruits of those investigations during discovery. The district court in this case ordered their production.  FirstEnergy now moves to stay that order pending resolution of its petition for a writ of mandamus.

We consider four factors when determining whether to grant a stay: (1) the movant's likelihood of success on the merits; (2) irreparable harm to the movant; (3) substantial injury to others; and (4) the public interest.  *Kentucky v. Biden*, 23 F.4th 585, 593 (6th Cir. 2022).  The "first two factors" are the "most critical."  *Nken v. Holder*, 556 U.S. 418, 434 (2009).

FirstEnergy argues that it is likely to succeed on the merits for three reasons:  (1) that the district court incorrectly applied the attorney-client privilege; (2) that the district court incorrectly applied the work-product doctrine; and (3) that the district court erred in excluding the declaration of James O'Neil.  Because FirstEnergy is likely to succeed at least on the attorney-client and work-product issues, and because it faces irreparable harm, we will grant the motion.

We give fresh review to a district court's attorney-client-privilege determinations, and we give abuse-of-discretion review to its work-product determinations. *United States v. Roxworthy*, 457 F.3d 590, 592 & n.1 (6th Cir. 2006). An abuse of discretion occurs when the district court "relies on erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *Ondo v. City of Cleveland*, 795 F.3d 597, 603 (6th Cir. 2015) (quotation omitted).

FirstEnergy has shown that it is likely that the district court erred in concluding that neither attorney-client privilege nor work-product doctrine covers any documents from the investigations.

Attorney-client privilege applies to confidential communications between a client and his attorney if the purpose of the communications is to obtain legal advice. *In re Grand Jury Subpoenas*, 454 F.3d 511, 519 (6th Cir. 2006). In *Upjohn Co. v. United States*, the Supreme Court held that the privilege applies when companies seek legal advice through internal investigations in response to criminal and civil investigations. 449 U.S. 383, 394–95 (1981).

*Upjohn* explains why the attorney-client privilege likely protects FirstEnergy's materials here. After Householder's arrest, the Department of Justice began criminal and civil investigations of FirstEnergy, and several lawsuits and state and federal regulatory actions against the company immediately followed. After learning of the alleged wrongdoing, FirstEnergy retained Jones Day, and its board of directors hired Squire Patton Boggs to investigate the matters. That work resulted in precisely the kinds of communications that *Upjohn* contemplates. As one FirstEnergy director put it, the lawyers from Squire Patton Boggs met with the board to provide "legal updates" on their investigative findings. R.550-2 at 7. And Jones Day "conduct[ed] a thorough internal investigation" and "examined carefully the relevant FirstEnergy Corp. records" "[i]n connection with" serving as "counsel for FirstEnergy Corp." and responding to the DOJ investigation. R. 259-

5 at 3, 13. Because FirstEnergy sought and received its counsels' advice through the investigations, the attorney-client privilege likely applies.

The district court thought that none of this mattered because FirstEnergy also used this advice for business purposes. That approach gets it backwards. What matters for attorney-client privilege is not *what* a company does with its legal advice, but simply *whether* a company seeks legal advice. *See Reed v. Baxter*, 134 F.3d 351, 355–56 (6th Cir. 1998) (noting that the privilege covers "legal advice of any kind"). After all, a corporation could hardly justify expending resources on legal advice that *wasn't* business-related. And it is the rare company faced with such criminal and civil allegations that would not have a business-related reason for seeking such critical and essential legal advice. That is why precedent directs us to consider whether a communication primarily seeks "to render or solicit legal advice" irrespective of a company's reason for wanting that legal advice. *See United States v. Roberts*, 84 F.4th 659, 670 (6th Cir. 2023) (quotation omitted).

FirstEnergy can also likely show that the products of its internal investigations are protected by the attorney-work-product doctrine. Work-product doctrine covers documents "prepared in anticipation of litigation." Fed. R. Civ. P. 26(b)(3). This protection ensures that an attorney may "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). In line with that guidance, this court determines whether work-product protection applies by asking whether documents were created "because of" a party's "reasonable" anticipation of litigation, as opposed to its ordinary business purposes. *Roxworthy*, 457 F.3d at 594.

FirstEnergy's materials likely meet that standard. The flood of legal and regulatory action prompting FirstEnergy's investigations explains why. The deluge began when the Department of Justice subpoenaed FirstEnergy immediately following the arrest of Householder, whose criminal complaint implicated FirstEnergy in wrongdoing. FirstEnergy and its board responded by hiring Jones Day and Squire Patton Boggs to conduct internal investigations. Even the plaintiffs acknowledged that "[o]bviously no internal investigations would have taken place but for the Department of Justice investigation." R.529 at 8. That decision proved a good idea. Within weeks, eight lawsuits loomed over various FirstEnergy directors and officers, along with multiple investigations into FirstEnergy by state and federal regulators—namely, the Securities and Exchange Commission, the Ohio Attorney General, and the Public Utilities Commission of Ohio. R.510 at 14–16 (citing dockets). By the plaintiffs' own admission, and as confirmed by this timeline of events, FirstEnergy's internal investigations produced materials likely "because of" actual—not merely anticipated—legal and regulatory threats.

As to work product, the district court, for reasons that remain unclear, concluded that the internal investigations were not performed in anticipation of litigation. It found that FirstEnergy would have undergone the investigations in substantially the same manner for business purposes. That conclusion ignores the criminal and civil subpoenas, eight lawsuits, and federal and state investigations which go to the heart of the issue. FirstEnergy, simply put, faced an onslaught of civil and criminal investigations while pursuing internal investigations. Work-product protection likely applies as well.

In opposing a stay, the plaintiffs argue that FirstEnergy failed to provide privilege logs or otherwise show which specific documents were protected and thus failed to carry its burden to show that the results of the investigations were protected. But the parties agreed that no one needed

to log "any" privileged communications or work product "exchanged between" a party and "its outside counsel" if the material was "dated after July 21, 2020," the day of the Householder complaint. R.295 at 2–3. In addition, FirstEnergy's failure to identify any specific documents as privileged matched the plaintiffs' broad and undifferentiated request for "all previously withheld documents . . . related to the internal investigation." R.489-1 at 33; *see* Fed. R. Civ. P. 34(b)(1)(A) (A discovery request "must describe with reasonable particularity each item or category of items to be inspected.").

FirstEnergy also faces irreparable harm absent a stay. We have repeatedly held in similar discovery cases that mandamus relief may be appropriate for "an erroneous forced disclosure of confidential information" because a court cannot "restore confidentiality to documents" on direct appeal, long after their disclosure. *In re Profs. Direct Ins. Co.*, 578 F.3d 432, 438 (6th Cir. 2009); *see also In re Perrigo Co.*, 128 F.3d 430, 437 (6th Cir. 1997) ("We find, as have several courts, that forced disclosure of privileged material may bring about irreparable harm.").

Meanwhile, there is no apparent harm to the plaintiffs. They are not entitled to FirstEnergy's privileged documents and therefore suffer no harm when a court denies access to them. *Cf. In re Perrigo Co.*, 128 F.3d at 437.

Finally, there is a strong public interest in preserving the attorney-client privilege and work-product doctrine. *See Upjohn*, 449 U.S. at 393 ("An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all."). The latter interest is further supported by the numerous amici that have filed briefs in support of FirstEnergy, seeking clarification on the application of the attorney-client privilege and work-product protection in the corporate context.

-6-

In view of these conclusions, we need not address FirstEnergy's disagreement with the district court's refusal to accept the O'Neil declaration. While we remain dubious of the court's conclusions, *see LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65 (2d Cir. 1999), we need not resolve the point today.

Accordingly, the motion for a stay is GRANTED pending resolution of FirstEnergy's mandamus petition.

ENTERED BY ORDER OF THE COURT

Kelly L. Stephens, Clerk