No. 24-3654

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

In re FirstEnergy Corp. Securities Litigation, et al.

_____

Appeal from the United States District Court
for the Southern District of Ohio
Nos. 20-cv-03785, 20-cv-4287
The Honorable Algenon L. Marbley

### PLAINTIFFS-PETITIONERS' PETITION FOR REHEARING OR
### REHEARING *EN BANC*

MURRAY MURPHY MOUL
  + BASIL LLP
JOSEPH F. MURRAY
BRIAN K. MURPHY
1114 Dublin Road
Columbus, OH  43215
Telephone:  614/488-0400
614/488-0401 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
MARK SOLOMON
JASON A. FORGE
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

*Attorneys for Plaintiffs-Petitioners*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................1

II.   RELEVANT FACTS AND PROCEDURAL HISTORY .............................2

    A.    FirstEnergy's Objections ........................................................2

    B.    The District Court's Deposition-Testimony Order ...............................4

    C.    FirstEnergy's Mandamus Petition ...........................................5

    D.    Plaintiffs' Answer in Opposition ...........................................5

    E.    FirstEnergy's Reply .........................................................6

    F.    This Court's Order ...........................................................6

    G.    FirstEnergy's Refusal to Comply ..........................................7

III.  ARGUMENT ...........................................................................8

    A.    A Simple Clarification is the Most Efficient Way Forward ................9

    B.    Vacating the District Court's Deposition-Testimony Order
           Would Violate Clear Precedent and Warrant Rehearing ...................11

IV.   CONCLUSION ........................................................................12

4900-9391-1409.v1

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Basulto v. Netflix, Inc.*,
2023 WL 3197655 (S.D. Fla. May 2, 2023)..........................................................6

*Bennett v. Enstrom Helicopter Corp.*,
686 F.2d 406 (6th Cir. 1982) ...............................................................................11

*RLR Invs., LLC v. City of Pigeon Forge, Tenn.*,
4 F.4th 380 (6th Cir. 2021) ...................................................................................8

*United States v. Sadler*,
24 F.4th 515 (6th Cir. 2022) .......................................................................*passim*

Federal Rules of Appellate Procedure
Rule 40(b)(1)(A).....................................................................................................12
Rule 40(b)(2)(A).....................................................................................................12

4900-9391-1409.v1

## I.    INTRODUCTION

As this Court acknowledged, Plaintiffs moved to compel: (1) production of all documents; and (2) answers to all questions related to FirstEnergy's internal investigations.  The district court compelled production of all documents, but its "deposition-testimony" order was much narrower and limited to questions about facts, regardless of source, but *not* "'*attorneys' legal conclusions derived from those facts*.'" Order & Opinion, R.653, PageID#14268-69 (emphasis added and citations omitted unless otherwise indicated).

FirstEnergy's petition sought no relief from the deposition-testimony order, and Plaintiffs' opposition cited *United States v. Sadler* to confirm its unassailability, as "*communications are not protected 'when an attorney conveys to his client facts acquired from other persons or sources*.'"  24 F.4th 515, 557 (6th Cir. 2022). FirstEnergy's reply did not dispute this point.  After echoing *Sadler*, this Court's order likewise limited its relief to vacating only "the district court's document production order."  Opinion, 6th Cir. R.35-2, Page#12, 14, attached hereto as Ex. 1. Nevertheless, FirstEnergy now contends this Court also vacated the deposition-testimony order.  Accordingly, Plaintiffs seek rehearing and rehearing *en banc* to clarify and confirm that this panel did not vacate the deposition-testimony order (and thus overrule *Sadler*).

- 1 -

## II.    RELEVANT FACTS AND PROCEDURAL HISTORY

### A.    FirstEnergy's Objections

On May 6, 2024, the district court entered a multi-faceted order that overruled 13 different FirstEnergy objections to various decisions by the Special Master.  Four objections concerned the O'Neil Declaration.    Order & Opinion, R.653, PageID#14252-55, 14258.  Three objections concerned whether FirstEnergy had established what, if any, documents related to its internal investigations were entitled to attorney-client or work-product protection, including "whether withheld documents contained legal advice or were created in anticipation of litigation."    *Id*., PageID#14261; *see also id.*, PageID#14261-65 ("FirstEnergy does not clarify what materials, if any, contain only confidential communications for the predominant purpose of rendering legal advice, and which materials were primarily made for other reasons.…  Said simply, FirstEnergy did not provide specifics on 'when, where, how, to whom, and in what manner' legal advice was communicated during the internal investigations and therefore failed to meet its burden."); *id.*, PageID#14265-68 ("FirstEnergy did not provide specific, non-conclusory evidence to establish that litigation was the 'driving force behind the preparation' of the disputed materials.  And again, FirstEnergy did not submit documents to the Special Master for *in camera*

- 2 -

review, so the Special Master could not independently determine their purposes.").[1]

Two objections concerned waiver. *Id.*, PageID#14268-72. One objection concerned deposition procedures. *Id.*, PageID#14272-74. One objection concerned a denial of FirstEnergy's motion for reconsideration. *Id.*, PageID#14274. One objection concerned a denial of FirstEnergy's motion to file a reply brief. *Id.* And one objection concerned whether FirstEnergy had properly instructed witnesses not to

---

[1]    These findings by the district court remain true. Since June 2023, when Plaintiffs filed the underlying motion to compel, FirstEnergy failed to identify for the Special Master, the district court, or this Court a single piece of protected information it has not already revealed to the Department of Justice as part of its cooperation agreement and/or to Plaintiffs. Indeed, the only examples of specific protected information that this Court's order cites are examples of information that FirstEnergy allowed to be *disclosed* to these adversaries. The order cites a *publicly filed* deposition notice and FirstEnergy's *publicly filed* deferred prosecution agreement (the "DPA") as the only support for the following determination: "The investigating firms, at any rate, did not simply recite facts learned from third parties; they determined what happened, whether it was lawful, and what civil and criminal liability could result. *See* R. 259-5 at 14 [deposition notice], 24 [the DPA]. They provided, in brief, legal advice." Opinion, 6th Cir. R.35-2, Page#13. If a deposition notice and the DPA reflect legal advice (and where they did so is difficult to discern), FirstEnergy plainly waived any protections by agreeing to disclose this "advice" in publicly filed documents. *Id.*

Beyond these examples of *disclosed* information, there are no specifics in the record of *any* protected information reflected in any documents that FirstEnergy has not already revealed to the Department of Justice as part of its cooperation agreement and/or to Plaintiffs. *But see* Opinion, 6th Cir. R.35-2, Page#12 (concluding the district court's document-production order, rooted largely in FirstEnergy's failure to specifically identify privileged material, is "the kind of 'serious' and 'particularly injurious' discovery ruling designed for this essential, if narrow, exception to the final-judgment rule").

4900-9391-1409.v1

answer any questions if their answers would be based on, or reveal, facts that they happened to have learned from a lawyer.  *Id.*, PageID#14268-69.

## B.    The District Court's Deposition-Testimony Order

In its objection regarding deposition testimony about facts, FirstEnergy argued that the Special Master had "order[ed] deposition witnesses to answer 'all fact-*related* questions (past and future) related to the internal investigation.'"  Order & Opinion, R.653, PageID#14268.  This, however, was imprecise, as the district court observed:

> To the extent FirstEnergy asserts that the Special Master's order allows privileged information to be disclosed, FirstEnergy misreads the order.  *The Special Master clearly stated that privileged or protected information is not discoverable.*  For example, the Special Master said that while facts are discoverable, "[d]iscovery of the attorneys ... is not." (Doc. 587 at 23).  The Special Master further clarified that "[d]iscovery of the attorneys' legal conclusions derived from those facts or thought processes to produce those facts is not discoverable." (*Id.* at 23–24). Thus, FirstEnergy's objection is *OVERRULED*.

*Id.*, PageID#14269 (alteration in original).  In other words, the deposition-testimony order had nothing to do with the Special Master or the district court's determinations concerning the protected status of FirstEnergy's internal investigations.

The district court's order confirms the limited scope of the deposition-testimony order:

> In his November 29 order, the Special Master instructed witnesses to "answer all fact-related questions," even if they learned of those facts due to the internal investigation.  (Doc. 571 at 17).  During the November 30 status conference, the Special Master clarified this order:

- 4 -

> [D]iscovery of the facts is permissible.  Discovery of the attorneys at this point is not.  Discovery of the attorneys' legal conclusions derived from those facts or thought processes to produce those facts is not discoverable.  But the fact that a witness learned of a factual allegation or representation or statement of fact from an investigator or as a result of the investigation is fair game for discovery under my order.

*    *    *

> Seemingly, FirstEnergy argues that all facts about the internal investigation are privileged or protected because, at some point, these facts were communicated by lawyers to various individuals.  Time and again, courts have rejected this type of argument.

Order & Opinion, R.653, PageID#14268-69 (alteration in original).

### C.    FirstEnergy's Mandamus Petition

Although FirstEnergy's Mandamus Petition again exaggerated the scope of the deposition-testimony order (Petition, 6th Cir. R.1-1, Page#40-41), it sought no relief concerning it, but rather only from the order to produce documents:  "[T]he Court should grant a writ of mandamus directing the district court to deny Plaintiffs' motion to compel disclosure of the Jones Day and Squire investigation *materials*."  *Id.* at Page#44.

### D.    Plaintiffs' Answer in Opposition

Although FirstEnergy's petition did not seek any relief regarding the deposition-testimony portion of the district court's order, Plaintiffs' opposition explained why that portion of the order was irrefutable:

4900-9391-1409.v1

Last, we have the issue that started this whole conflict: FirstEnergy's obstruction of discovery by improperly instructing witnesses not to answer any questions about the factual bases for their own actions, decisions, or opinions if the witness happened to have learned those facts from a lawyer – even though FirstEnergy has repeatedly disclosed those facts themselves. The law is clear: "*[C]ommunications are not protected 'when an attorney conveys to his client facts acquired from other persons or sources*.'" *Sadler*, 24 F.4th at 557; *see also Basulto v. Netflix, Inc.*, 2023 WL 3197655, at *14 (S.D. Fla. May 2, 2023) (citing cases). The soundness of this portion of the district court's order is not debatable.

Answer in Opposition, 6th Cir. R.31, Page#44-45 (emphasis in original).

### E.    FirstEnergy's Reply

FirstEnergy's reply brief confirmed that the deposition-testimony order was not debatable by not contesting it in any way. Indeed, the reply does not mention it, this Court's decision in *Sadler*, or anything else that directly or indirectly challenges the deposition-testimony order. FirstEnergy concluded its reply by again seeking relief only from the order to produce documents: "The Court should grant a writ of mandamus directing the district court to deny Plaintiffs' motion to compel disclosure of the Jones Day and Squire investigation *materials*." Reply, 6th Cir. R.34, Page#24.

### F.    This Court's Order

Consistent with the limited relief FirstEnergy's mandamus petition sought, this Court's order and corresponding judgment do not even include the word "deposition" or "testimony." Opinion, 6th Cir. R.35-2, Page#1-14; Judgment, 6th Cir. R.35-3,

Page#1.  Moreover, all three references to the Court-ordered relief are limited to "document" and/or "production."  *See* Opinion, 6th Cir. R.35-2, Page#2 ("We grant the petition and vacate the district court's *production* order."); *id.*, Page#14 ("We grant the petition for mandamus and vacate the district court's *document production* order."); Judgment, 6th Cir. R.35-3, Page#1 ("IT IS ORDERED that the petition is GRANTED, and the district court's production order is VACATED.").  In between these three references to vacating only the district court's production order, this Court confirmed *Sadler*'s vitality:  "'communications are not protected when an attorney conveys to his client facts acquired from other persons or sources.'  *United States v. Sadler*, 24 F.4th 515, 557 (6th Cir. 2022) (quotation omitted)."  Opinion, 6th Cir. R.35-2, Page#12.

### G.    FirstEnergy's Refusal to Comply

At the parties' first status conference following entry of this Court's mandamus order, Plaintiffs' counsel provided three categories of depositions Plaintiffs intended to complete, including the depositions the deposition-testimony order allowed Plaintiffs to reopen.   10/6/25 Hr'g Tr., R.862, PageID#20413-14/29:25-30:4.  FirstEnergy confirmed that the mandamus order vacated only the document-production order:  "[T]he Sixth Circuit granted the petition and vacated the order compelling protection of the documents."  *Id.*, PageID#20422/38:23-25.  Later,

- 7 -

however, FirstEnergy characterized this Court's order as somehow also vacating the

deposition-testimony order (and, thus, overruling *Sadler*):

> [I]f he wants to reopen the depositions, to ask about what facts he's
> going to say, well, what facts did you learn from Jones Day; what facts
> did you learn from Squire[].
>
> Our position is, in light of what the Sixth Circuit has ruled in this
> mandamus order, that that is precluded.

*Id.*, PageID#20448/64:4-11.  This is literally the opposite of what this Court's order

says and what *Sadler* holds.  To avoid months of additional delay, Plaintiffs bring this

motion now before this Court issues its mandate and loses jurisdiction over its own

mandamus order.

## III.    ARGUMENT

"In the Sixth Circuit, a three-judge panel may not overturn a prior decision

unless a Supreme Court decision 'mandates modification' of our precedent."  *RLR*

*Invs., LLC v. City of Pigeon Forge, Tenn.*, 4 F.4th 380, 390 (6th Cir. 2021).  Plaintiffs

do not believe the Court violated this principle, or that FirstEnergy has a good-faith

basis for asserting that it did.  But litigating an issue even as obvious as this one could

take upwards of a year, which necessitates this petition.  Therefore, to the extent the

panel intended its order to be read as overruling *Sadler*'s holding that,

"communications are not protected 'when an attorney conveys to his client facts

acquired from other persons or sources'" (24 F.4th at 557) by vacating the deposition-

- 8 -

testimony order, which went no further than *Sadler* expressly allows, this would amount to a point of law the Court has overlooked or misapprehended, warranting rehearing.

## A.    A Simple Clarification is the Most Efficient Way Forward

While it seems obvious that this Court vacated only the district court's production order and left undisturbed *Sadler* and the district court's deposition-testimony order, after FirstEnergy's contrary contention, Plaintiffs respectfully ask this Court to so clarify. That is the most efficient way forward. Plaintiffs filed their motion concerning FirstEnergy's improper obstruction of depositions in June *2023*. These are just a few examples of the numerous instructions not to answer questions that had nothing to do with any legal advice or analysis:

> [FIRSTENERGY'S COUNSEL]: Object, *I object and instruct you to leave out from your answer any understandings that you gained from communications with counsel.*
>
> THE WITNESS: *Everything that I know about the DPA is information that I obtained from discussions with our lawyers.*

Compel Supp. Mem., Ex. 21, R.549-2 at PageID#11846/482:1-11.

> [PLAINTIFFS' COUNSEL]: And these facts were used to terminate Mr. Jones and Mr. Dowling; isn't that correct?
>
> *         *         *
>
> [FIRSTENERGY'S COUNSEL]: So – and I want to caution you here. *So don't reveal any* privileged discussions with counsel or communication you had with counsel or *information you received from*

- 9 -

*counsel*.  To the extent you can answer the question, go ahead. But you have to exclude that information.

Compel Supp. Mem., Ex. 21, R.549-2, PageID#11857/517:9-23 (objections without

instructions not to answer omitted throughout).

> [PLAINTIFFS' COUNSEL:] And I'm not talking about revealing any confidential conversations with counsel.  This is a public disclosure. You – you authorized the filing of the 10-K, which had this public disclosure, correct?

> [THE WITNESS:] Correct.

> \*       \*       \*

> [Language from FirstEnergy's SEC Form 10-K for 2020 read into record]

> [PLAINTIFFS' COUNSEL:] And you understand that the Ohio government official was Mr. Sam Randazzo; is that correct?

> [FIRSTENERGY'S COUNSEL:] Objection.  *If you have that understanding from counsel, I instruct you not to answer*.

Compel Supp. Mem., Ex. 21, R.549-2 at PageID#11865-67/544:14-546:10.

> [DIRECT ACTION PLAINTIFFS' COUNSEL:] Q.  Are you saying that facts conveyed by counsel are privileged?

> [FIRSTENERGY'S COUNSEL:] A.  Yes.

Motion to Compel, R. 489, PageID#10486.

The district court's deposition-testimony order rightly disapproved of these

objections and allowed Plaintiffs to reopen the depositions that FirstEnergy obstructed

through similar objections and instructions preventing witnesses from answering

- 10 -

questions about facts.  That was clearly correct under *Sadler*: "[C]ommunications are not protected 'when an attorney conveys to his client facts acquired from other persons or sources,'" (*Sadler*, 24 F.4th at 557), which holding this Court's order also quoted and embraced.  Disposing of this petition with an order that includes a single sentence confirming that rehearing is not necessary because this Court's order cannot reasonably be read as vacating the deposition-testimony order and thus overruling *Sadler* (*i.e.*, the Court meant what it said and said what it meant) could save months or years of delay if FirstEnergy defies the district court's deposition-testimony order, as its recent comments suggest it intends to do.  *Cf. Bennett v. Enstrom Helicopter Corp.*, 686 F.2d 406, 408 (6th Cir. 1982) (rendering moot motion for clarification regarding the legal ownership of a helicopter the plaintiff's husband was piloting when it crashed with the following sentence: "[w]e assume for purposes of this rehearing the state of affairs most favorable to [the plaintiff], namely that Enstrom of Michigan, and not Enstrom of New Zealand, owned and operated the aircraft at the time of the accident").

## B.    Vacating the District Court's Deposition-Testimony Order Would Violate Clear Precedent and Warrant Rehearing

FirstEnergy did not ask this Court to overrule the district court's deposition-testimony order, and this panel vacated only the district court's document-production order.  But in the alternative and unlikely event the panel views its decision as

- 11 -

allowing FirstEnergy to continue preventing witnesses from answering questions that would reveal facts they learned from a lawyer, Plaintiffs respectfully petition for panel rehearing, as that would conflict with *Sadler*. *See* Fed. R. App. P. 40(b)(1)(A). In the even more unlikely event that the panel intended to overrule *Sadler* without so stating, Plaintiffs respectfully petition for rehearing *en banc*. *See* Fed. R. App. P. 40(b)(2)(A) (*en banc* warranted if panel decision conflicts with another Sixth Circuit decision).

## IV.    CONCLUSION

Plaintiffs simply want this Court to confirm that it did not vacate the district court's deposition-testimony order (and thus overrule *Sadler*), as FirstEnergy's petition did not even seek such relief and *Sadler* is binding precedent. Alternatively, in the unlikely event that the mandamus order was intended to vacate the deposition-testimony order (and thus overrule *Sadler*), Plaintiffs ask this panel or the *en banc* Court to rehear FirstEnergy's petition to reaffirm *Sadler* by explicitly upholding the deposition-testimony order.

DATED:  October 9, 2025            Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
MARK SOLOMON
JASON A. FORGE

s/ Jason A. Forge
JASON A. FORGE

- 12 -

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

MURRAY MURPHY MOUL
  + BASIL LLP
JOSEPH F. MURRAY (0063373)
BRIAN K. MURPHY (0070654)
1114 Dublin Road
Columbus, OH  43215
Telephone:  614/488-0400
614/488-0401 (fax)

*Attorneys for Plaintiffs-Petitioners*

- 13 -

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that the foregoing PLAINTIFFS-PETITIONERS' PETITION FOR REHEARING OR REHEARING *EN BANC* complies with the type-volume limitation of Fed. R. App. P. 40(d)(3) because the text of the motion contains 2,659 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f), according to the word count provided by Microsoft Word 2016 word processing software.

The undersigned further certifies that the motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 word processing software in Times New Roman, 14-point.

s/ Jason A. Forge
_____
JASON A. FORGE

## DECLARATION OF SERVICE

I, the undersigned, declare:

1.      That declarant is and was, at all times herein mentioned, a citizen of the United States and employed in the City and County of San Diego, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is 655 W. Broadway, Suite 1900, San Diego, California 92101.

2.      I hereby certify that on October 9, 2025, I electronically filed the foregoing document: **PLAINTIFFS-PETITIONERS' PETITION FOR REHEARING OR  REHEARING *EN BANC*** with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system.

3.      I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 9, 2025, at San Diego, California.

s/ Jason A. Forge
JASON A. FORGE

EXHIBIT 1

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0272p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

―――――――――――

IN RE: FIRSTENERGY CORPORATION,

*Petitioner*.

No. 24-3654

―――――――――――

On Petition for a Writ of Mandamus

United States District Court for the Southern District of Ohio at Columbus.
Nos. 2:20-cv-03785; 2:20-cv-04287—Algenon L. Marbley, District Judge.

Decided and Filed:  October 3, 2025

Before:  SUTTON, Chief Judge; BATCHELDER and NALBANDIAN, Circuit Judges.

―――――――――――

### COUNSEL

**ON PETITION FOR A WRIT OF MANDAMUS and REPLY:** Robert J. Giuffra, Jr., David M.J. Rein, SULLIVAN & CROMWELL LLP, New York, New York, Morgan L. Ratner, SULLIVAN & CROMWELL LLP, Washington, D.C., for Petitioner.  **ON RESPONSE:** Jason Forge, ROBBINS GELLER RUDMAN & DOWD LLP, San Diego, California, for Respondents Los Angeles County Employees Retirement Association, et al.  **ON BRIEF:** John S. Williams, WILLIAMS & CONNOLLY LLP, Washington, D.C., Eric C. Chaffee, CASE WESTERN RESERVE UNIVERSITY SCHOOL OF LAW, Cleveland, Ohio, Roy T. Englert, Jr., Matthew M. Madden, Mark H. Russell, KRAMER LEVIN NAFTALIS & FRANKEL LLP, Washington, D.C., Jonathan M. Redgrave, REDGRAVE LLP, Chantilly, Virginia, for Amici Curiae.

―――――――――――

### OPINION

―――――――――――

PER CURIAM.  FirstEnergy Corporation undertook two internal investigations after the federal government brought charges against former Ohio House Speaker Larry Householder, because the charges implicated FirstEnergy in a bribery scheme related to the passage of Ohio House Bill 6.  Soon after, shareholders sued FirstEnergy in a securities class action and sought the fruits of those investigations during discovery.  The district court ordered their production,

No. 24-3654                    *In re FirstEnergy Corp.*                    Page 2

prompting FirstEnergy's petition for a writ of mandamus. We grant the petition and vacate the district court's production order.

I.

In late 2016, FirstEnergy, an Ohio-based public utility company, faced financial headwinds due to two failing nuclear plants that its subsidiary owned. To solve the problem, FirstEnergy allegedly engaged in a bribery scheme with Larry Householder, then a member of the Ohio House of Representatives. FirstEnergy allegedly contributed millions of dollars to Householder's campaign funds through a network of fundraising groups, and Householder threw himself behind the passage of House Bill 6, a piece of legislation that promised FirstEnergy a $1.3 billion bailout and a fixed revenue stream of $100 million annually, all at ratepayers' expense.

Matters took a turn in July 2020, when the federal government released a criminal complaint charging Householder with violating the Racketeer Influenced and Corrupt Organizations Act, *see* 18 U.S.C. § 1962(d), and, in connection with the complaint, issued subpoenas to FirstEnergy. The complaint described how an unnamed company (understood to be FirstEnergy) and its executives contributed millions to the campaign funds of Ohio politicians to ensure House Bill 6's passage. The day after the complaint became public, FirstEnergy's stock price dropped by 45%.

Within a week, FirstEnergy and an independent committee of its board retained separate outside counsel to conduct internal investigations. The board hired Squire Patton Boggs LLP to investigate the allegations in the Householder complaint. And FirstEnergy hired Jones Day to investigate the allegations and to advise the company about how to handle the subpoenas.

The Householder complaint and FirstEnergy subpoenas generated an assortment of legal and regulatory actions against FirstEnergy. Within weeks, various state and federal regulators— the Securities and Exchange Commission, the Ohio Attorney General, and the Public Utilities Commission of Ohio—initiated investigations against FirstEnergy. By that time, FirstEnergy and various directors and officers faced eight civil lawsuits asserting securities and RICO claims.

Among this raft of lawsuits was this one. Two shareholders filed securities class actions against FirstEnergy on behalf of all people and entities that bought FirstEnergy stock during the alleged bribery scheme. They claimed that FirstEnergy and several executives defrauded FirstEnergy investors in violation of federal securities laws.

That lawsuit led to this attorney-client and work-product dispute. During discovery, the claimants sought complete access to the fruits of the Squire and Jones Day investigations, moving to compel the production of "all previously withheld documents" related to both investigations. R.489-1 at 9. They also demanded that the district court order FirstEnergy's witnesses to "answer all questions (past and future) related to the internal investigation[s]." R.489-1 at 9. FirstEnergy opposed the motion.

A special master recommended that the court grant the claimants' motion and ordered FirstEnergy to "produce all previously withheld documents related to" both investigations. R.571 at 17. The district court accepted the special master's recommendation, and the court denied FirstEnergy's motion to certify the order for interlocutory review, *see* 28 U.S.C. § 1292(b). FirstEnergy filed a petition for mandamus relief with this court and requested a stay of the district court's order. We granted the stay and now turn to the mandamus petition.

## II.

Two questions shape our review. Did the district court's privilege and work-product rulings amount to legal error? If so, were the errors sufficiently exceptional to warrant mandamus relief? *See Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380–81 (2004).

### A.

*Attorney-client privilege*. The attorney-client privilege "is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). It represents a sturdy exception to the common-law maxim that the public "has a right to every man's evidence." *Trump v. Vance*, 591 U.S. 786, 799 (2020). The privilege applies to confidential communications between a lawyer and his client arising from the client's request for legal advice. *See In re Grand Jury Subpoenas*, 454 F.3d 511, 519 (6th Cir. 2006).

No. 24-3654                     *In re FirstEnergy Corp.*                     Page 4

*Upjohn* sets the framework for this case. It held that the privilege applies when a company seeks legal advice to assess risks of criminal and civil liability. 449 U.S. at 394–95. In that case, Upjohn enlisted outside counsel to conduct an internal investigation after learning of "possibly illegal" payments that the company had made. *Id.* at 386–87. The investigation involved numerous communications between the company's employees and its attorneys through questionnaires and interviews, all of which the Supreme Court deemed privileged. *Id.* at 387, 397. The communications, the Court reasoned, gave the attorneys "a basis for legal advice concerning [Upjohn's] compliance" with a bevy of securities and tax laws, and "potential litigation in each of these areas." *Id.* at 394. They were thus part of Upjohn's efforts to "secure legal advice" about its potential criminal or civil wrongdoing. *Id.*

What was true for Upjohn is true for FirstEnergy. As with Upjohn, FirstEnergy and its board hired lawyers to "secure legal advice" through internal investigations into the company's potential criminal and civil wrongdoing. *Id.* As soon as the Department of Justice arrested Householder, unsealed his criminal complaint, and issued criminal subpoenas to FirstEnergy, FirstEnergy retained Jones Day to investigate the allegations in the Householder complaint and "advise the [c]ompany on its response" to the Justice Department's "criminal investigation." R.511-1 ¶ 22. FirstEnergy's board did likewise. It held "several" meetings to discuss "the [c]ompany's response" to the Justice Department's "criminal investigation and litigation filed against FirstEnergy." R.511-1 ¶ 12. That's when it decided to enlist Squire to conduct an internal investigation into the allegations about Householder's scheme with the company. R.511-1 ¶ 13. In asking for outside counsel's analysis about what happened and in seeking its legal advice about what to do in response to the "very significant legal risk it suddenly faced," R.511-1 at ¶ 29, FirstEnergy and the board clearly sought legal advice.

And legal advice they received. As one FirstEnergy director put it, Squire attorneys "met frequently" with directors overseeing the investigation "to discuss Squire's investigative findings, legal analyses, and assessments of potential criminal and civil liability." R.511-1 ¶ 17. Another director confirmed that the Squire lawyers provided "legal updates" on their investigative findings. R.550-2 at 7. Jones Day likewise "conduct[ed] [its] investigation," R.259-5 at 18, and "examined carefully the relevant FirstEnergy Corp. records" "[i]n connection

with" serving as "counsel for FirstEnergy Corp." and responding to the Department of Justice investigation. R.259-5 at 28. Those communications—including outside counsels' analyses about what acts occurred, whether those acts were illegal, and what criminal and civil consequences might ensue—all involved requested legal advice. *See Upjohn*, 449 U.S. at 395, 397.

*Work product.* The work-product doctrine also covers FirstEnergy's internal investigations. The work-product doctrine applies to documents "prepared in anticipation of litigation." Fed. R. Civ. P. 26(b)(3). The protection ensures that an attorney may "assemble information, sift . . . the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). Work-product protection applies if the company or counsel created the documents "because of" a party's "reasonable" anticipation of litigation, as opposed to its ordinary business purposes. *In re Pros. Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009) (quotation omitted).

FirstEnergy's materials meet this standard. The onslaught of legal and regulatory action surrounding FirstEnergy's investigations shows why. After the Justice Department unsealed the Householder complaint, FirstEnergy and its board "anticipated" that the company "would face government investigations, civil litigation, and regulatory proceedings." R.511-1 ¶ 5. In the aftermath of the 45% decline in FirstEnergy stock a day later, they "anticipated" even more legal action in the form of federal securities law claims. R.72 ¶ 9; R.511-1 ¶ 5. Those expectations prompted the internal investigations. Even the claimants acknowledged to the district court that "[o]bviously no internal investigations would have taken place but for the Department of Justice investigation." R.529 at 8.

This anticipated legal risk became an actual legal risk. Within weeks, FirstEnergy directors and officers faced eight shareholder lawsuits, as well as multiple investigations into FirstEnergy by the Securities and Exchange Commission, the Ohio Attorney General, and the Public Utilities Commission of Ohio. The claimants' admission about the "but for" cause of the internal investigations, together with the dramatic timeline of events, leaves no question as to "the driving force behind" the investigations. *United States v. Roxworthy*, 457 F.3d 590, 595 (6th Cir. 2006) (quotation omitted). FirstEnergy's internal investigations produced materials

"because of" actual, not merely anticipated, legal and regulatory threats.

All in all, the attorney-client and work-product doctrines clearly covered these communications.

### B.

The district court's explanations for its order do not alter this conclusion. It reasoned that FirstEnergy initiated the investigations for business advice, not legal advice, based on its observation that FirstEnergy later used the fruits of the investigations for business decisions. But these bedrock protections are not so easily pierced. What matters under the attorney-client privilege is whether a company seeks legal advice, *see United States v. Roberts*, 84 F.4th 659, 670 (6th Cir. 2023), not what it later does with that advice, *U.S. ex rel. Hamrick v. GlaxoSmithKline LLC*, 814 F.3d 10, 17 (1st Cir. 2016). Over and over, FirstEnergy showed that it primarily sought and received legal advice from its attorneys throughout the investigations. *Roberts*, 84 F.4th at 670.

That FirstEnergy made business decisions based on this legal advice does not change matters. Companies "regularly consult their attorneys about a variety of problems arising in the course of the business." *Swidler & Berlin v. United States*, 524 U.S. 399, 408 (1998). Think of compensation plans, proposed sales, a potential bankruptcy, or decisions to terminate employees. *See, e.g.*, *Alomari v. Ohio Dep't of Pub. Safety*, 626 F. App'x 558, 570–71 (6th Cir. 2015) (legal advice on an employee's termination); *GlaxoSmithKline*, 814 F.3d at 17; *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1037–38 (2d Cir. 1984) (legal advice on employee-compensation plans, proposed company reorganization, and company sale); *Sedco Int'l, S.A. v. Cory*, 683 F.2d 1201, 1203, 1205–06 (8th Cir. 1982) (legal advice on pursuing a business venture). None of these adjacent business purposes for seeking legal advice transforms the communications and legal work into something other than legal advice. In the context of the legal threats that FirstEnergy faced—high-stakes criminal and civil allegations—it will be the rare company that will not also have business purposes for seeking essential legal advice. The attorney-client privilege nonetheless plainly applies.

No. 24-3654                    *In re FirstEnergy Corp.*                    Page 7

The district court fared no better when it came to work product. Recall that work-product protection kicks in when materials were created "because of a party's . . . anticipation of litigation." *Roxworthy*, 457 F.3d at 594. As the district court saw it, FirstEnergy had shown only that "employment decisions and business concerns," not the anticipation of ligation, prompted the investigations. R.653 at 22.

But that conclusion is possible only if we overlook "the realities of litigation" that FirstEnergy faced. *United States v. Nobles*, 422 U.S. 225, 238 (1975). We would have to overlook that FirstEnergy initiated the investigations after the Householder complaint implicated FirstEnergy as a key player in a criminal scheme, and after the Department of Justice criminally subpoenaed FirstEnergy. We would have to overlook that numerous civil lawsuits and multiple federal and state regulatory actions were filed against FirstEnergy in the following weeks. And we would have to overlook the claimants' own concession to the district court that "[o]bviously" FirstEnergy would not have initiated investigations "but for" legal action against it. R.529 at 8. This "intensely practical" doctrine, *Nobles*, 422 U.S. at 238, requires acute attention to "the circumstances surrounding the documents' creation," *Roxworthy*, 457 F.3d at 595. The work-product doctrine plainly applies to the civil and criminal litigation crisis FirstEnergy faced.

In making its decision, the district court refused to consider a declaration from FirstEnergy director James O'Neil describing the investigations and what prompted them. Because O'Neil swore his declaration "under penalty of perjury" without swearing it "*as true* under penalty of perjury," the district court excluded it as non-compliant with federal law. And without it, the district court reasoned, FirstEnergy had no case against production of its materials. The claimants all but abandon this point in their briefing before us—and for two good reasons.

*First*, the court erred in excluding O'Neil's declaration. Under 28 U.S.C. § 1746(2), a party may support a factual claim with a declaration "in writing of [the declarant] which is subscribed by him, as true under penalty of perjury, and dated, in *substantially* the following form:" "I declare . . . under penalty of perjury that the foregoing is true and correct. Executed on (date)." (emphasis added). O'Neil's signed and dated declaration stated: "I, James F. O'Neil, III, hereby declare under penalty of perjury as follows." R.511-1 at 2. That "substantially" met § 1746's requirements. In the apt words of the Second Circuit: "Although the letter does not

contain the exact language of [§] 1746 nor state that the contents are 'true and correct,' it substantially complies with these statutory requirements, which is all that [§ 1746] requires." *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65–66 (2d Cir. 1999). O'Neil's two-word omission—which he attempted to correct once the special master, without prompting from the claimants, rejected O'Neil's declaration—is akin to a scrivener's error. Just as we would not punish a legislature for making such a mistake, *see U.S. Nat'l. Bank of Or. v. Indep. Ins. Agents of Am., Inc.,* 508 U.S. 439, 462 (1993), we should not punish an affiant for making such a modest mistake, one that the opposing party did not complain about and one that in the end did not suffice to render this declaration non-compliant.

*Bonds v. Cox* does not alter this conclusion.  20 F.3d 697, 702 (6th Cir. 1994).  *Bonds* held that an undated declaration did not comply with § 1746.  But that's because the undated declaration lacked any other indicator of when it was made.  *See id.*  Not so here when it comes to accuracy.  When someone swears a statement "under . . . penalty of perjury," that person "is presumed to tell the truth."  *See Guy v. Lexington-Fayette Urb. Cnty. Gov't,* 57 F. App'x 217, 225 (6th Cir. 2003) (quotation omitted); *Montgomery v. Ruxton Health Care, IX, LLC,* 2006 WL 3746145, at *3 (E.D. Va. Dec. 15, 2006) ("[W]hen a person swears to a statement under penalty of perjury, it is reasonable to infer that she believes the contents to be true and correct," even if the declarant does not literally "state that th[e] contents are 'true and correct.'").  O'Neil substantially complied with § 1746.

*Second*, the attorney-client privilege and work-product doctrine protect First Energy's investigative materials with or without the O'Neil declaration.  It does not take a company leader's insider knowledge to discern that criminal and civil investigations, state and federal regulatory action, and numerous shareholder lawsuits led FirstEnergy to expect litigation and seek legal advice.  At bottom, as the claimants now seem to recognize, the district court and the special master mistakenly excluded the O'Neil declaration.  At all events, the work-product and privilege doctrines would have shielded the internal investigations anyway.

The district court also faulted FirstEnergy for failing to submit privilege logs, request in camera review, or otherwise specify which documents are privileged and why.  But in a joint stipulation submitted to the district court, the parties agreed that no party needed to log "any"

"[p]rivileged communications, documents, or work product exchanged between" a party and "its outside counsel" if the material "concern[ed]" the Householder litigation and was "dated after July 21, 2020," the day of the Householder complaint.  R.295 at 2–3.  That understandable stipulation by the parties, in view of the tsunami of litigation facing the company, did not have a time limit.  Even if that were not the case, FirstEnergy's decision not to identify any specific documents as privileged matched the plaintiffs' broad and undifferentiated request for "all previously withheld documents," including those related to the internal investigation.  R.489-1 at 33; *see* Fed. R. Civ. P. 34(b)(1)(A) (A discovery request "must describe with reasonable particularity each item or category of items to be inspected.").  In the last analysis, the attorney-client and work-product protections covered the materials that the district court required FirstEnergy to produce.

III.

That the district court erred in requiring the production of these protected communications does not by itself justify a writ of mandamus.  Mandamus is a "drastic and extraordinary remedy reserved for really extraordinary causes."  *Cheney*, 542 U.S. at 380 (quotation omitted).  In view of that lofty standard, FirstEnergy must meet three requirements to obtain the writ:  (1) It must have "no other adequate means to attain the relief [it] desires"; (2) it must show that its right to the issuance of the writ is "clear and indisputable"; and (3) it must show that the writ is "appropriate under the circumstances."  *Id.* at 380–81; *see John B. v. Goetz*, 531 F.3d 448, 457 (6th Cir. 2008).

A.

*Alternative means to obtain relief*.  FirstEnergy has "no other adequate means to attain the relief [it] desires."  *Cheney*, 542 U.S. at 380.  Consider the three other possibilities for review and why each one does not suffice as an adequate alternative.  The company, to begin, could have asked the district court to certify the privilege and work-product questions for interlocutory appeal.  *See* 28 U.S.C. § 1292(b).  But FirstEnergy did just that, and the district court denied the request.  R.673.

Case: 24-3654     Document: 37     Filed: 10/09/2025     Page: 29
Case: 24-3654     Document: 35-2     Filed: 10/03/2025     Page: 10          (12 of 17)

No. 24-3654                    *In re FirstEnergy Corp.*                    Page 10

Next, it could have defied the district court's order, potentially prompting a criminal contempt citation, which it may then immediately appeal. *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009). But this alternative has its own shortcoming. A district court may choose *either* civil or criminal sanctions in its discretion. Had the court opted for a civil sanction, FirstEnergy would have "no means of review until the perhaps far distant day of final judgment." 15B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3914.23, at 146 (2d ed. 1992). That gamble, in which even a "victory" comes at the price of a criminal contempt sanction, does not suffice as a reasonable alternative.

Last of all, it could have waited to appeal the district court's order until a final judgment. But this path would require FirstEnergy to produce its investigative materials, at which point, "damage to the attorney-client relationship will have already been done by the disclosure itself." *In re Lott*, 424 F.3d 446, 451 (6th Cir. 2005); *In re Kellogg*, 756 F.3d 754, 761 (D.C. Cir. 2014) (describing "the very purpose" of privilege doctrine as preventing "the release of those confidential documents"). There is no way to unring those disclosure bells.

*Clear and indisputable right to relief.* An "error of law, standing alone," does not justify the writ. *In re Parker*, 49 F.3d 204, 207 (6th Cir. 1995). The district court's error must be "clear" and "beyond the bounds" of its discretion. *In re Chimenti*, 79 F.3d 534, 540 (6th Cir. 1996). For the reasons explained above, the district court plainly crossed that line when it departed from "strong and longstanding" privilege and work-product doctrines. *Fed. Deposit Ins. Corp. v. Ernst & Whinney*, 921 F.2d 83, 86 (6th Cir. 1990).

*Propriety of mandamus relief.* Granting the writ also is "appropriate under the circumstances." *Cheney*, 542 U.S. at 381. FirstEnergy understandably and wisely sought counsel and generated work-product documents in the course of defending itself against an imposing assortment of civil, regulatory, and criminal investigations and lawsuits. Overused though the phrase may be, this was surely a bet-the-company setting demanding apex legal advice. In that setting, the customary expectation is that the resulting conversations and documents will be protected. *See, e.g.*, *Hickman*, 329 U.S. at 510. Plus, it's not just this case that FirstEnergy has a right to be concerned about. If FirstEnergy releases its investigative materials to the claimants in this case, it likely will be forced to do the same in other cases—and

Case: 24-3654    Document: 37    Filed: 10/09/2025    Page: 30
Case: 24-3654    Document: 35-2    Filed: 10/03/2025    Page: 11    (13 of 17)

No. 24-3654                    *In re FirstEnergy Corp.*                    Page 11

nothing in the district court's order suggests otherwise. Confirming the point, the Ohio Consumers' Counsel, the claimant in the matter before the Public Utilities Commission of Ohio, has already demanded that FirstEnergy produce its investigatory documents as a result of the district court's order. R.644-5 at 3.

Beyond FirstEnergy, the district court's order promises "substantial uncertainty" for corporations more broadly, as over forty amici have argued in this case. *See Swidler*, 524 U.S. at 409; Brief for Corporate Law and Legal Ethics Scholars as Amici Curiae Supporting Petitioner at 27; Brief for 39 Law Firms as Amici Curiae Supporting Petitioner at 3; Brief of Amici Curiae Attorneys' Liability Assurance Society Ltd., et al., Supporting Petitioner at 19. That is because there is "no way to affirm the [d]istrict [c]ourt's ruling without abandoning" nearly a half century (since *Upjohn*) "of jurisprudence concerning the scope of the attorney-client privilege" and work-product doctrine, *In re Lott*, 424 F.3d at 456, or without discouraging "full and frank communication" between companies and their attorneys when investigating their own wrongdoing, *Upjohn*, 449 U.S. at 389. Because "predictable and certain" privilege and work-product standards are essential for FirstEnergy and future litigants facing perilous litigation consequences, *In re Lott*, 424 F.3d at 450, mandamus relief is eminently appropriate here.

## B.

The claimants' counterarguments fall short. They start by trying to identify alternative ways in which FirstEnergy could seek relief, claiming that the U.S. Supreme Court has established that post-final-judgment appeals "suffice" to "ensure the vitality of the attorney-client privilege." *Mohawk*, 558 U.S. at 109. That means, as they see it, that FirstEnergy and companies like it must invariably wait for a final judgment to correct such errors. But *Mohawk* said more than the claimants let on. While the Court stated that, "generally" speaking, the standard appeals process suffices, it also emphasized that writs of mandamus "serve as useful safety valves for promptly correcting serious errors." *Id.* at 109–11 (quotation omitted); *see also id.* at 112 ("[M]andamus . . . facilitate[s] immediate review of some of the more consequential attorney-client privilege rulings."); *id.* at 114 ("[M]andamus . . . provide[s] adequate protection to litigants ordered to disclose materials purportedly subject to the attorney-client privilege."). The ruling before us—erroneously calling for disclosure of *all* withheld materials from two

Case: 24-3654    Document: 37    Filed: 10/09/2025    Page: 31
Case: 24-3654    Document: 35-2    Filed: 10/03/2025    Page: 12
(14 of 17)

No. 24-3654                 *In re FirstEnergy Corp.*              Page 12

investigations spawned by a storm of legal and regulatory action by federal, state, and private actors—is precisely the kind of "serious" and "particularly injurious" discovery ruling designed for this essential, if narrow, exception to the final-judgment rule. *Id.* at 110–11.

The claimants suggest that *In re Express Scripts*, a recent unpublished order, holds that direct appeal remains an adequate remedy for seriously mistaken denials of attorney-client protection. No. 25-3006 (6th Cir. June 3, 2025). But that is not what *Express Scripts* said. "[M]andamus relief is justified," it pointed out, "when a discovery order 'amounts to a . . . clear abuse of discretion.'" Slip op. at 2 (quoting *Mohawk*, 558 U.S. at 111). That is this case. What *Express Scripts* did, no less importantly, matched what it said. *Express Scripts* dismissed the petition because the parties that asserted the privilege could not demonstrate *any* right to relief from the district court's order, much less a clear one. Slip op. at 2–3. In this instance, in marked contrast, the district court's errors are plain, and FirstEnergy's right to relief is plainer still.

*Holt-Orsted v. City of Dickson* does not change matters either. 641 F.3d 230 (6th Cir. 2011). There, it is true, the court remarked that "[o]nly when the person who asserts a privilege is a non-litigant will an appeal from the final decision be inadequate." *Id.* at 238 (quotation omitted). But there is a catch. In that case, the court discussed the collateral order doctrine, not mandamus. *Id.* at 236. That explains why the court added that, while we "ha[ve] not allowed immediate review of discovery orders involving claims of privilege under the collateral order doctrine," we "instead favor[] mandamus as the appropriate method of review." *Id.* Just so here.

The claimants contend that the internal investigations conveyed mere facts, not legal advice. True, "communications are not protected when an attorney conveys to his client facts acquired from other persons or sources." *United States v. Sadler*, 24 F.4th 515, 557 (6th Cir. 2022) (quotation omitted). True also, just as "a party cannot conceal a fact merely by revealing it to his lawyer," a lawyer cannot conceal a fact merely by disclosing it to his client. *Upjohn*, 449 U.S. at 396 (quotation omitted).

But the instant investigations involved legal advice, and they gathered facts closely related to that legal analysis. Jones Day and Squire provided "legal analyses, and assessments of potential criminal and civil liability," not sterile summaries of FirstEnergy's involvement in the

Case: 24-3654    Document: 37    Filed: 10/09/2025    Page: 32
Case: 24-3654    Document: 35-2    Filed: 10/03/2025    Page: 13                    (15 of 17)

No. 24-3654                    *In re FirstEnergy Corp.*                    Page 13

Householder affair.  R.511-1 ¶ 17.  There is no such thing as legal advice without facts.  The investigating firms, at any rate, did not simply recite facts learned from third parties; they determined what happened, whether it was lawful, and what civil and criminal liability could result.  *See* R. 259-5 at 14, 24.  They provided, in brief, legal advice.

The claimants fall back on a clutch of waiver arguments.  The district court did not invoke waiver in explaining its order.  As a result, it does not support the wide-ranging production order.  But we do not see how waiver could support the order anyway.  Voluntarily disclosing the substance of privileged communications to a third party, sure enough, generally waives the attorney-client privilege as to those communications.  *In re King's Daughters Health Sys., Inc.*, 31 F.4th 520, 527 (6th Cir. 2022).  And parties likewise generally waive work-product protection by voluntarily disclosing the substance of protected communications to an adversary.  *In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*, 293 F.3d 289, 306 & n.28 (6th Cir. 2002).

But no such waivers occurred here, least of all with respect to *all* of the communications, as would be required to uphold this order.  The claimants note that FirstEnergy disclosed portions of the internal investigation in a deferred prosecution agreement and during civil litigation.  While FirstEnergy disclosed some information that also appears in the internal investigation, most of it was non-privileged, and parties do not waive the attorney-client privilege by disclosing non-privileged material.  *See King's Daughters*, 31 F.4th at 527.  The bulk of this overlapping information was already discoverable, and the rest tended to be bare conclusions from the investigation, not "the substance of the[] attorney's advice," *In re Grand Jury Proc. Oct. 12, 1995*, 78 F.3d 251, 254 (6th Cir. 1996); *see United States v. Collis*, 128 F.3d 313, 320 (6th Cir. 1997); *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006).  Divulging those ultimate findings does not waive either protection.  *In re Grand Jury Proc. Oct. 12*, 78 F.3d at 254.

The claimants add that FirstEnergy waived both protections by sharing part of its internal investigation with PricewaterhouseCoopers, its existing independent auditor.  FirstEnergy, it is true, disclosed thousands of documents to Price Waterhouse.  But that does not mean it waived the attorney-client privilege or work-product protection as to the internal investigations.  Again,

Case: 24-3654     Document: 37     Filed: 10/09/2025     Page: 33
Case: 24-3654     Document: 35-2     Filed: 10/03/2025     Page: 14          (16 of 17)

No. 24-3654                    *In re FirstEnergy Corp.*                    Page 14

the disclosure of non-privileged material never waives the attorney-client privilege. *See King's Daughters*, 31 F.4th at 527. Price Waterhouse's own memoranda, moreover, indicate that "responsive documents have been withheld from PwC based on the assertion of attorney-client or other legal privilege." R.510 at 19. If FirstEnergy shared non-privileged information, it can still assert both protections as to privileged materials.

The argument that FirstEnergy waived the attorney-client privilege by disclosing some materials to Price Waterhouse suffers from another flaw. "[B]ecause the work product privilege looks to the vitality of the adversary system rather than simply seeking to preserve confidentiality, it is not automatically waived by the disclosure to a third party." *In re Grand Jury Subpoena*, 220 F.3d 406, 409 (5th Cir. 2000). Only disclosures to an adversary will waive work-product protection. *See In re Columbia*, 293 F.3d at 306 & n.28. The ethical rules governing public accountants like Price Waterhouse forbid them from "disclos[ing] any confidential client information without the specific consent of the client." Am. Inst. of Certified Pub. Accts., Code of Pro. Conduct § 1.700.001.01. And once litigation against the client is imminent, an independent auditor like Price Waterhouse would be obligated to withdraw, confirming it could never be an adversary. *See United States v. Deloitte LLP*, 610 F.3d 129, 140 (D.C. Cir. 2010). It follows that, on this record, the claimants have not established that FirstEnergy and its auditor are adversaries. Anything divulged to Price Waterhouse would therefore, at a minimum, remain protected as work product. *Cf. New Phoenix Sunrise Corp. v. C.I.R.*, 408 F. App'x 908, 919 (6th Cir. 2010).

The claimants point out how rarely this court grants mandamus petitions in privilege or work-product disputes. That is true, but it has little application to this significant discovery dispute, in which the district court made substantial departures from bedrock privilege and work-product principles, some of them barely defended before us.

We grant the petition for mandamus and vacate the district court's document production order.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 24-3654

IN RE: FIRSTENERGY CORPORATION,

    Petitioner.

**FILED**

Oct 03, 2025

KELLY L. STEPHENS, Clerk

Before:  SUTTON, Chief Judge; BATCHELDER and NALBANDIAN, Circuit Judges.

# JUDGMENT

On Petition for a Writ of Mandamus

United States District Court for the Southern District of Ohio at Columbus.

    UPON CONSIDERATION of the petition for a writ of mandamus and the subsequent pleadings of counsel,

    IT IS ORDERED that the petition is GRANTED, and the district court's production order is VACATED.

**ENTERED BY ORDER OF THE COURT**

_____

Kelly L. Stephens, Clerk